**Robert F. ARIGANELLO, et al., Plaintiffs,**

v.

**SCOTT PAPER COMPANY, Defendant.**

No. 80–40429.

United States District Court, E.D. Michigan, S.D.

Oct. 26, 1982.

Mark Hopper, Ann Arbor, Mich., Richard Paul Zipser, Southfield, Mich., for plaintiffs.

Mark S. Dichter, James F. Anderson, Philadelphia, Pa., Chester E. Kasiborski, Jr., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

### I FACTS

This is a diversity action brought by thirty-eight former salaried employees of the

Scott Paper Co. Prior to 1978, plaintiffs were employed at a paper mill located in Detroit, and owned by defendant. On February 22, 1980, however, defendant sold the paper mill to Port Huron Paper Co. Subsequently, defendants were hired to resume their jobs at the same rate of pay with Port Huron Paper Co.

The instant case centers on the issue of severance pay. Plaintiffs contend that defendant, throughout the years of plaintiffs' employment, affirmatively led plaintiffs to believe that they were entitled to severance pay upon termination of their employment.

Defendant contends that the issue of severance pay is controlled by a written termination pay statement distributed by defendant to plaintiffs. This statement allegedly issued in 1975 provides as follows: "In the event of a sale of a portion of the Company to another Company application of this policy to the employees involved is subject to discretionary review, including modification of some provisions of the policy or withholding of its application entirely, depending upon the probability of continued employment by the new owner." [1]

In accordance with the statement, defendant elected to withhold severance pay for all persons whose employment continued with Port Huron Paper Co. Consequently, plaintiffs received no severance pay.

Plaintiffs contend that they are entitled to relief on the basis of two theories: First, plaintiffs advance a claim based on the Michigan Supreme Court's *Toussaint* [2] decision. Plaintiffs allege that defendant made affirmative representations to various plaintiffs that Scott Paper Co. employees would receive severance pay at the termination of their employment with the company. Plaintiffs further assert that the termination pay statement was not distributed to them. Indeed, plaintiffs contend that they had no knowledge of the statement. According to plaintiffs, the company's representations caused plaintiffs to produce added output. A number of plaintiffs assert that they rejected offers of employment from other companies in order to remain with Scott Paper and thus enjoy the expectation of severance pay. In light of all this, plaintiffs seek relief under *Toussaint.*

Plaintiffs also have advanced an unjust enrichment claim. Although this claim was not really dealt with in the briefs, it too is contingent upon plaintiffs' lack of knowledge of the termination pay statement. Plaintiffs contend that they put forth extra work in expectation of the severance pay; they argue that it is unfair to withhold severance pay in light of the work.

Defendant rejects both of those theories. Defendant contends that the written statement devastates plaintiffs' *Toussaint* claim. In this respect, defendant asserts that none of plaintiffs allege that they were told they would receive severance pay in the event they were reemployed by the transferee company after a sale of the Detroit paper mill. Furthermore, defendant asserts that plaintiffs have not cited a single instance where a Scott Paper Co. employee was employed by the transferee company after a sale and still received severance pay.

Based on this position, defendant has filed a motion for summary judgment. That motion is now before the Court.

## II  LEGAL ANALYSIS

■ As a threshold matter, the Court considers the *Toussaint* doctrine and its applicability to the instant case. *Toussaint* holds that the written or oral assertions of an employer can create a contract whereby the employee cannot be terminated in the absence of just cause. [3]

---

**1.** The statement is appended as Exhibit A to defendant's brief in support of motion for summary judgment at docket entry # 9.

**2.** The *Toussaint* doctrine was enunciated by the Michigan Supreme Court in *Toussaint v. Blue Cross,* 408 Mich. 579, 292 N.W.2d 880 (1980).

This Court will summarize the *Toussaint* doctrine at fns. 3–8 and accompanying text *infra.*

**3.** *See Toussaint v. Blue Cross,* 408 Mich. 577, 610, 292 N.W.2d 880 (1980).

*Toussaint* is an obvious relative of the doctrine of constitutional procedural due process.[4] While *Toussaint* deals with private employment and the due process property component deals with public employment, the two concepts are nonetheless quite similar. Both involve expectations raised by affirmative acts of the employer.[5]

The Court would point out that *Toussaint* applies to the allegations made by plaintiffs. The explicit holding of *Toussaint* was that an employer can create an understanding whereby employees cannot be *discharged* absent just cause.[6] Obviously, this holding is not squarely on point with respect to plaintiffs' claim that they have been deprived of severance pay in contravention to the understanding created by the defendant. Nevertheless, an examination of *Toussaint* indicates that the scope of the decision includes the facts of the instant case.

In this respect, the Court notes footnote 32 of *Toussaint*.[7] There, the State Supreme Court likened the continued-employment-absent-just-cause contract to various employment contractual relationships such as "bonuses, pensions and other forms of compensation."[8] Moreover, the tenor of *Toussaint* is that an employer can create various job-related expectations as a consequence of the assertions made by the employer to his employees. *Toussaint* contains nothing limiting the doctrine created therein to the discharge context. Accordingly, the Court finds that plaintiffs' allegations state a claim under *Toussaint*.

■ This, of course, comes nowhere near resolving the motion before the Court. It did, however, seem necessary to fit plaintiffs' allegations within *Toussaint*. Considerations must now be given to whether defendant is correct in its contention that there are no genuine issues as to the facts alleged by plaintiffs that purportedly comprise plaintiffs' *Toussaint* claim.

In this respect, two issues predominate. First, the Court must determine whether defendant has pierced the pleadings with respect to plaintiffs' allegations that defendant led plaintiffs to believe that plaintiffs would receive severance pay under the circumstances. A closely-related second issue is whether defendants have disproved plaintiffs' allegations that they never received a copy of the written termination pay statement.

There are seven affidavits attached to plaintiffs' brief in opposition to defendant's motion for summary judgment.[9] The seven affidavits are among the thirty-eight plaintiffs in this case. The affidavits abound with assertions that defendant indeed led plaintiffs to believe that a policy of severance pay was in effect at all times.

In this respect, the Court considers the statements of Richard McConkie.[10] Mr. McConkie, a former labor relations employee,[11] was under the impression that defendant had a continuing policy of severance pay.[12] Similarly, Frank E. Ehrenberg had a firm conviction that he would receive severance pay at the time he was terminated from Scott Paper Co. Mr. Ehrenberg's sworn statement asserts that his belief in his entitlement to severance pay was constant for at least the last twelve years of

---

4. In support of this observation, this Court points out that the opinion built on concepts developed in the constitutional procedural due process opinion of *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *Perry* is discussed in the *Toussaint* opinion at 408 Mich. 579, 617, 292 N.W.2d 880.

5. For an elaboration of the concept as applied to liberty deprivations and procedural due process, *see* this court's opinion in *Walker v. Johnson,* 544 F.Supp. 345 (ED Mich., 1982).

6. *See* 408 Mich. 610, 292 N.W.2d 880 (1980).

7. *See id.* at 619 n. 32, 292 N.W.2d 880 (1980).

8. *See id.*

9. *See* collection of affidavits at docket entry # 27.

10. *See* affidavit of Richard P. McConkie at docket entry # 27 in the record.

11. *See id.* at ¶ 4.

12. *See id.* at ¶ 3.

his employment.[13] It is interesting to note that Mr. Ehrenberg allegedly switched from a laborer position to a management position at least partially as a result of the company's representations that he would receive severance pay.[14]

In noting this last allegation, the Court must confess a sense of surprise upon reading the first paragraph of page 3 of defendant's December 30, 1981 reply memorandum.[15] Therein, defendant asserts that *"none* of the affiants claim they were ever told by a representative of Scott Paper that they would receive severance pay if, as a result of a sale, they ceased to be employed by Scott Paper and were employed by the purchaser." This statement is sophistry. Numerous affiants—including Ehrenberg, Ingle,[16] and Ariganello[17]—have alleged that the company made representations that the said affiants would receive severance pay. There is not a hint in these statements that there was an exception where the company was sold and the affiants were employed by the purchaser company. Clearly, it is reasonable to interpret the statements as covering the fact pattern in the instant case.

The Court must now consider whether defendant has offered evidence adequate to prove that the company did not make the assertions claimed by the affiants. In light of the volume of statements advanced by plaintiffs, this would be a formidable burden. The Court finds, however, that defendants have submitted *nothing*—either in the way of impeaching materials or counter statements—which detracts from the array of positive statements advanced by plaintiffs.

The sole affidavit filed by defendant is that of Arthur W. Hudock,[18] staff vice president of corporate compensation and benefits at Scott Paper Co. Mr. Hudock's affidavit says nothing about whether the company ever made representations to employees regarding severance pay. Instead, the Hudock affidavit deals solely with the written termination policy statement.[19]

Thus, there clearly is still an issue of fact as to whether the company ever made representations to plaintiffs regarding severance pay. Nevertheless, the written termination policy statement issue must be explored. Conceivably, the written termination policy statement—if distributed to the employees—would have instead operated to quash reasonable severance pay expectations and thus defeat the *Toussaint* claims.

In this respect, however, the Court must correct a misconception of defendant. This involves the strenuously advanced contention that the termination policy statement is binding on plaintiffs whether or not plaintiffs knew of the statement's existence.[20] In fact, *Toussaint*—as applied to the instant set of allegations—mandates precisely the opposite premise. Given that defendant made representations to plaintiffs creating an expectation that plaintiffs would receive severance pay, defendant could not then escape the created expectation by adopting a contrary written statement and never notifying plaintiffs of the written statement's existence. The overriding *Toussaint* philosophy of protecting legitimate expectations would be circumvented by these tactics. Thus, in light of the unrefuted allegations that defendant made representations assuring plaintiffs severance pay, the burden shifts to defendant to show that there is no issue of fact but that plaintiffs were notified of the written policy statement.

**13.** *See* affidavit of Frank E. Ehrenberg at docket entry # 27, ¶ 4.

**14.** *See id.* at ¶ 7.

**15.** The reply memorandum is at docket entry # 37.

**16.** *See* affidavit of James O. Ingle at docket entry # 27, ¶¶ 1, 3.

**17.** Robert F. Ariganello at docket entry # 27, ¶ 4.

**18.** The Hudock affidavit appears at docket entry # 12.

**19.** *See* affidavit of Arthur W. Hudock at docket entry # 12 in the record.

**20.** *See* p. 4 of defendant's reply brief at docket entry # 37.

Again, defendant depends solely on the Hudock affidavit. But the Court must point out a curious aspect of this affidavit. Hudock merely states that the written statement "is the termination pay policy which was applicable to salaried employees at the paper mill at which plaintiffs worked and which was in effect at the time of the sale of that paper mill to Port Huron paper company."[21] Hudock's affidavit does not state that the written statement was disseminated to plaintiffs. Thus, it is not clear as to how and why the written statement was "applicable." Does Hudock mean that the policy expressed in the statement was applicable because it was distributed or otherwise made known to plaintiffs? If so, the affidavit is not specific enough. Or does Hudock mean that the statement was applicable because the company said it was applicable even though plaintiffs knew nothing of the statement. If the latter premise is defendant's position, plaintiffs' *Toussaint* claims remain alive. Thus, the Court reads the Hudock affidavit as a rather modest effort to establish that plaintiffs knew of the written policy statement and thus any earlier expectations of severance pay were eliminated.

In opposition to the Hudock affidavit, plaintiffs have again mustered a formidable array of sworn statements. Richard McConkie asserts that he never received written notice of a modification of the severance pay policy.[22] Frank Ehrenberg asserts that he never saw or had tendered to him a writing dealing with the terms of severance pay.[23] Similarly, plaintiffs Ingle,[24] Ariganello,[25] Kropog[26] and Alford[27] categorically deny that they ever saw or knew of the written termination policy statement.

Thus, the Court must find that there is a genuine issue of fact as to plaintiffs' contention that the written policy statement was never distributed or made known to plaintiffs. And the Court notes that plaintiffs have depicted the following factual scenario. Defendant affirmatively led plaintiffs to believe that plaintiffs would receive severance pay; numerous plaintiffs relied on defendant's assertions; defendant then produced a written policy statement allowing it to abandon severance policy, but defendant never let plaintiffs know of this statement—hence the statement was a mere artifice to cover defendant's tracks and allow defendant to escape its severance pay obligations under *Toussaint.*

The Court must underscore that it does not yet believe plaintiffs' version of this case. The policy statement was issued in 1975. It would seem anomalous that the company would hide this statement for five years. But the possibility of the paper trail—a tactic not at all uncommon in employment relations law—remains. The Court cannot out of thin air conclude that plaintiffs have committed wholesale perjury in order to keep this case alive. Absent such a conclusion, summary judgment simply cannot be granted. Summary judgment is appropriate where the movant has demonstrated that there is no genuine issue of fact as to the truth of the factual claims advanced by the non movant.[28] Here, defendant has fallen far short of satisfying this burden. Therefore, the Court must deny summary judgment as to the *Toussaint* claims. Similarly, if plaintiffs' story is true, the unjust enrichment

---

**21.** *See* Hudock affidavit at ¶ 5.

**22.** *See* affidavit cited at n. 10 *supra* at ¶ 3.

**23.** *See* affidavit cited at n. 13, *supra* at ¶ 5.

**24.** *See* affidavit cited at n. 16, *supra* at ¶¶ 4, 6.

**25.** *See* affidavit cited at n. 17, *supra* at ¶¶ 2, 4.

**26.** *See* affidavit of Edward J. Kropog at docket entry # 27, ¶¶ 3, 6.

**27.** *See* affidavit of Sylvester C. Alford at docket entry # 27, ¶ 6.

**28.** *See Weaver v. Jago,* 675 F.2d 116, 118 (CA 6, 1982); *Ackerman v. Diamond Shamrock,* # 80–3578 (CA 6, 1982); *Schultz v. Newsweek Inc.* # 80–1090 (CA 6, 1982); *See also Adickes v. S.H. Kresge & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Poller v. C.B.S.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

claim is a possible alternative theory to *Toussaint.* Thus, the unjust enrichment claim remains in this case.

### III CONCLUSION AND ORDER

For the reasons stated in the foregoing opinion, the Court hereby DENIES defendant's motion for summary judgment.

The parties are hereby advised of the following: Within fourteen (14) days of the date of this order, the parties are to meet and discuss discovery. Within seven (7) days of the said meeting, each party is to submit a written statement to the Court indicating the status of discovery. The statement must indicate the amount of time needed to complete discovery. Furthermore, the statement must indicate what—if any—discovery motions the given party wishes to renew or bring before the Court. In the event motions are asserted, appropriate briefs must be appended to the statement or incorporated by reference from earlier briefs in the record.

Following receipt of these materials, the Court will set a date at which time any discovery motions will be resolved and final dates will be set. The parties are advised that the Court is eager to try this case, and that the procedure set out above must be adhered to strictly.

IT IS SO ORDERED.