MATULEWICZ v GOVERNOR

Docket No. 96333. Submitted October 13, 1987, at Lansing. Decided
January 17, 1989. Leave to appeal applied for.

Dennis Matulewicz and thirty-six other hearing referees brought
an action in the Ingham Circuit Court against the Governor
and others challenging the constitutionality of 1985 PA 103,
which amended §§ 206 and 213 of the workers' compensation
act, and seeking a declaration that § 206, which eliminates the
position of hearing referee previously held by plaintiffs, and
§ 213, which creates a Board of Magistrates, an autonomous
entity and independent body in the Department of Labor
composed of thirty members appointed by the Governor and
which are exempted from civil service, are unconstitutional.
Plaintiffs also sought injunctive and declaratory relief. The
Governor filed an Executive Message with the Supreme Court,
requesting that the Ingham Circuit Court be authorized to
certify a controlling question of public law to the Supreme
Court for immediate consideration. In lieu of granting the
request, the Supreme Court directed the Ingham Circuit Court
to establish an accelerated schedule, proceed to trial, and issue
a final judgment. The Ingham Circuit Court, Robert Holmes
Bell, J., declared § 213 unconstitutional and permanently en-
joined the defendants from taking further steps to effectuate it.
The Supreme Court thereafter granted the defendants leave to
appeal prior to decision by the Court of Appeals. 424 Mich 864
(1985). The Supreme Court then reversed the ruling of the
circuit court and held that § 213 is constitutional. The Court
remanded the matter to the circuit court for further considera-
tion of plaintiffs' remaining claims. *Civil Service Comm v Dep't
of Labor,* 424 Mich 571 (1986). On remand, the circuit court
concluded that the Supreme Court's opinion put to rest with
finality all of plaintiffs' claims under Const 1963, art 11, § 5,
and the claim that plaintiffs were deprived of a valuable
property interest without due process. The circuit court also

REFERENCES

Am Jur 2d, Civil Service §§ 2, 3, 5, 72-75; Constitutional Law §§ 655
*et seq.*; Pleadings §§ 309 *et seq.*

Supreme Court's views as to what constitutes a bill of attainder
prohibited by federal constitution. 53 L Ed 2d 1273.

determined that plaintiffs' claims for impairment of contractual obligations, denial of equal protection, unfair treatment in legislative investigation, and abridgement of federal civil rights were no longer viable. The court also determined that there was no bill of attainder. Plaintiffs moved for a rehearing and for leave to amend their claim for breach of contract. The circuit court denied plaintiffs' motions and granted defendants' motion for judgment as a matter of law on plaintiffs' bill of attainder claim. Plaintiffs appealed from the circuit court's order and judgment.

The Court of Appeals *held:*

1. The circuit court did not err in summarily dismissing plaintiffs' remaining claims.

2. The circuit court properly ruled that plaintiffs were not denied equal protection as plaintiffs have not been removed from the civil service system as they alleged.

3. The Supreme Court's opinion determined that 1985 PA 103 is facially constitutional but allowed for the possibility that plaintiffs could, at some future date, establish that the act, as applied, discriminates on the basis of race or sex. The Supreme Court did not explicitly direct the circuit court to grant plaintiffs an opportunity to prove their allegations of discriminatory treatment.

4. The circuit court properly found that the plaintiffs were not deprived of their civil service status and thus were not deprived of a valid property and liberty interest.

5. The circuit court properly denied plaintiffs' motion to amend their complaint regarding impairment of their employment contracts and properly dismissed plaintiffs' count for breach of contract for failure to state a claim upon which relief could be granted. Summary disposition of this matter was appropriate.

6. Act 103 does not "punish" the plaintiffs. Plaintiffs' claim that Act 103 is a bill of attainder fails as a matter of law. Summary disposition of this matter was appropriate.

7. The circuit court properly denied plaintiffs' motion to compel pretrial discovery.

Affirmed.

1. WORKERS' COMPENSATION — CONSTITUTIONAL LAW — CIVIL SERVICE — HEARING REFEREES — BOARD OF MAGISTRATES.

Amendment of the workers' compensation act to abolish the civil service position of hearing referee and establish a Board of Magistrates in its place outside the civil service system to hear and adjudicate workers' compensation claims does not violate the civil service provision of the constitution (Const 1963, art

11, § 5; 1985 PA 103; MCL 418.206, 418.213; MSA 17.237[206], 17.237[213]).

2. CIVIL SERVICE — ELIMINATION OF POSITIONS — CLASSIFIED SERVICE.

The power of the Civil Service Commission to regulate the conditions of employment in the classified service does not preclude the Legislature from eliminating a position once classified as within the civil service system.

3. PLEADING — AMENDMENT OF PLEADINGS.

Leave to amend pleadings shall be freely given when justice so requires; a trial court's grant or denial of a motion to amend will not be disturbed on appeal absent an abuse of discretion; an abuse of discretion will not be found where, prior to denying a motion to amend, the judge finds that justice would not be served by an amendment (MCR 2.118[A]).

4. CONSTITUTIONAL LAW — BILL OF ATTAINDER.

A bill of attainder is a legislative act that applies to either named individuals or to easily ascertainable members of a group so as to punish them without a judicial trial; whether a legislative action amounts to punishment depends upon the attendant circumstances and the causes of the deprivation (US Const, art 1, § 10; Const 1963, art 1, § 10).

5. CONSTITUTIONAL LAW — BILL OF ATTAINDER — PUNISHMENT.

The inquiry necessary to the determination whether a statute inflicts forbidden punishment so as to constitute a bill of attainder considers: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish.

6. STATUTES — APPEAL — MOTIVES OF LEGISLATORS.

Courts are limited to consideration of the legislation itself and other documented legislative history when reviewing a challenge to a legislative enactment; however, the motive of the legislators may be examined where fraud, personal interest or corruption is alleged.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Jeffrey A. Heldt*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George H. Weller,* Assistant Attorney General, for defendants.

Before: BEASLEY, P.J., and MACKENZIE and R. P. HATHAWAY,* JJ.

R. P. HATHAWAY, J. This case primarily involves a constitutional challenge by civil service employees to legislative restructuring of the workers' compensation system. At issue are §§ 206 and 213 of 1985 PA 103, which amends the Workers' Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*, and was approved by Governor Blanchard on July 30, 1985. Section 206, MCL 418.206; MSA 17.237(206), eliminates the position of hearing referee previously held by plaintiffs, while § 213, MCL 418.213; MSA 17.237(213), creates a Board of Magistrates, an autonomous entity and independent body in the Department of Labor, composed of thirty members appointed by the Governor.

Plaintiffs attack the elimination of their civil service positions by the Legislature as unconstitutional. On August 16, 1985, plaintiffs filed suit in Ingham Circuit Court seeking a writ of mandamus as well as injunctive and declaratory relief. Plaintiffs claim that the Legislature acted in bad faith and in furtherance of partisan and discriminatory motives and that Act 103 unconstitutionally removed their positions from the civil service system and transferred their job responsibilities to political appointees.

Shortly thereafter, Governor Blanchard filed an Executive Message with our Supreme Court requesting that the Ingham Circuit Court be authorized to certify a controlling question of public law to the Supreme Court for immediate consideration. In lieu of granting the Governor's request, the Supreme Court directed the Ingham Circuit Court to establish an accelerated schedule of proceedings

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to include discovery and trial and to issue a final judgment in the case no later than November 30, 1985.

On December 2, 1985, the Ingham Circuit Court struck down § 213 of Act 103, holding that the hearing referees are not members of a "proper" board or commission and that § 213, establishing the Board of Magistrates, is an unconstitutional attempt to evade the constitutional limitation. The Supreme Court granted bypass of the Court of Appeals, 424 Mich 864 (1985), and on March 28, 1986, reversed the ruling of the circuit court, holding that § 213 of Act 103 is constitutional. *Civil Service Comm v Dep't of Labor,* 424 Mich 571; 384 NW2d 728 (1986), modified in part and reh den 425 Mich 1201 (1986). Our Supreme Court then remanded the matter to the circuit court for further consideration of plaintiffs' remaining claims. *Civil Service Comm, supra* at 626.

On remand, defendants moved for entry of judgment. The court treated defendants' motion for entry of judgment as analogous to a motion for summary disposition pursuant to MCR 2.116(C)(8). In an order and opinion dated July 17, 1986, the circuit court examined the Supreme Court's opinion to determine what claims remained valid. The court concluded "that the Supreme Court's opinion puts to rest with finality all of plaintiffs' claims under art 11, § 5, i.e., those claims embodied in Counts I, II, III, IV and VI of the complaint." According to the circuit court, the Supreme Court also summarily disposed of plaintiffs' claim that they had been deprived of a valuable property interest without due process of law since our Supreme Court ruled that Act 103 does not deny plaintiffs their civil service status.

The court then examined plaintiffs' claim contained in ¶¶ 29 and 30 of Count V of the complaint,

that Act 103 impairs obligations of their employment contracts. The trial judge found plaintiffs' allegations disturbingly vague and concluded that, in view of these pleading deficiencies and because the Supreme Court made it clear that Act 103 does not deprive plaintiffs of their civil service status, plaintiffs had failed to state a claim for the impairment of contractual obligations. The court next examined plaintiffs' equal protection claim, contained in ¶ 31 of Count v of the complaint, and concluded that plaintiffs sought relief for an injury they had not suffered since the Supreme Court had clearly determined that plaintiffs were not deprived of their civil service status. Next, the court reviewed plaintiffs' claims of unfair treatment in legislative investigation and abridgement of federal civil rights under 42 USC 1983, 1985. As to both claims, the court concluded that plaintiffs failed to state a claim upon which relief could be granted. Finally, the court addressed plaintiffs' allegation that Act 103 constitutes a bill of attainder in violation of Const 1963, art 1, § 10. The court denied defendants' motion as to this claim, stating that, "[i]nasmuch as inquiries into legislative purpose and intent are required, summary disposition based upon the pleadings is inappropriate."

Following entry of the circuit court's opinion and order of July 17, 1986, plaintiffs moved for rehearing and for leave to amend their claim for breach of contract. Defendants moved pursuant to MCR 2.116(C)(10) for judgment as a matter of law, alleging that there was no genuine issue of material fact as to whether 1985 PA 103 was a bill of attainder. Following oral argument, the circuit court, in an order and judgment dated October 20, 1986, denied plaintiffs' motions for rehearing and to amend Count v of their complaint and granted

defendants' motion for judgment as a matter of law on plaintiffs' bill of attainder claim. Plaintiffs appeal as of right from this October 20, 1986, order and judgment of the circuit court.

The circuit court did not err in summarily dismissing plaintiffs' remaining claims. Counts II, III, IV and VI were clearly addressed and dismissed by the Supreme Court's decision in the instant case. As to Count I, ¶ 13, plaintiffs' claim that Act 103 was enacted in bad faith for partisan and discriminatory motives, we find that this also was addressed and rejected by our Supreme Court. In *Civil Service Comm, supra* at 625, the Court recognized the good faith limitations on the authority of the Legislature but noted that in the instant case the new Board of Magistrates was vested with greater powers to determine the facts with substantial finality and with full finality in cases involving less than $2,000. These differences negate plaintiffs' claim that Act 103 was enacted in bad faith for partisan and discriminatory motives.

Next, plaintiffs alleged that Act 103 was enacted for discriminatory motives and in response to the hiring of minority hearing referees. Further, plaintiffs alleged in Count V, ¶ 31, that, as other hearing referees remained safeguarded by the civil service system, their removal deprived plaintiffs of equal protection. Both claims were dismissed by the circuit court.

We agree with the circuit court's ruling that plaintiffs were not denied equal protection as plaintiffs have not been removed from the civil service system as they alleged. See *Civil Service Comm, supra* at 624. As for plaintiffs' racial and sexual discrimination claim, we interpret the Supreme Court's following statement in *Civil Service Comm* as meaning that Act 103 is facially constitutional but allowing for the possibility that plain-

tiffs could, at some future date, establish that Act 103, as applied, discriminates on the basis of race or sex. See, e.g., *Miller v C A Muer Corp,* 420 Mich 355, 358; 362 NW2d 650 (1984).

> It is argued at some length that the elimination of the position of hearing referee was motivated by racial and sexual bias.
> The record in respect of these claims has not been developed.
> The referees are not precluded by today's decision of this Court sustaining the facial constitutionality of Act 103 from seeking to establish that Act 103 discriminates racially or sexually in violation of the constitution of this state or of the Untied States. [*Civil Service Comm, supra* at 624.]

We disagree with plaintiffs' argument that the above statement from the Supreme Court's majority opinion explicitly directed the circuit court to grant plaintiffs an opportunity to prove their allegations of discriminatory treatment. To hold otherwise allows plaintiffs the opportunity to circumvent the Supreme Court's ruling that Act 103 is constitutional and was enacted in an effort to reform the workers' compensation system. Our discussion regarding plaintiffs' allegation that Act 103 was enacted in bad faith likewise applies to plaintiffs' claim that the act was enacted with a racially or sexually discriminatory intent.

Plaintiffs further allege in ¶ 29 of Count v of their complaint to have a contract right to continuing employment as hearing referees in the Workers' Compensation Bureau that constitutes a valid property and liberty interest. The circuit court dismissed this claim, finding that the Supreme Court had defined the property interest referred to in Count v, ¶ 29, as "civil service status" and held that Act 103 does not deprive plaintiffs of that status. We agree.

In *Civil Service Comm, supra* at 625, our Supreme Court stated that the power of the Civil Service Commission to regulate the conditions of employment in the classified service did *not* preclude the Legislature from eliminating a position once classified as within the civil service system. If plaintiffs' property interest is their civil service status, which they retain with its attendant rights, Act 103 has deprived plaintiffs of nothing and their claim was appropriately dismissed.

Additionally, the circuit court found plaintiffs' claim for impairment of their employment contracts, set forth in ¶¶ 29 and 30 of Count v, disturbingly vague and dismissed it, stating that plaintiffs failed to allege with particularity the extent to which Act 103 impairs the obligations of their contracts. Thereafter, plaintiffs filed a motion to amend their claim. The circuit court denied the motion stating that the proposed amendment would be futile and that plaintiffs continued to refuse to acknowledge that their positions, not their employment, had been eliminated. Additionally, the circuit court ruled that plaintiffs had failed to show that they had a contract and that case law does not support such a claim.

MCR 2.118(A) provides that leave to amend shall be freely given when justice so requires. This Court will not disturb a trial court's grant or denial of a motion to amend absent an abuse of discretion. The trial court's discretion is limited, however, in that, prior to denying a motion to amend, the judge must find that justice would not be served by an amendment to the pleadings. *Harvey v Security Services, Inc,* 148 Mich App 260, 265; 384 NW2d 414 (1986). We agree with the circuit court that justice would not be served by an amendment to the pleadings.

Plaintiffs' claim that their contract rights· were

impaired is founded on the implied contract theory recognized by our Supreme Court in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). However, Michigan courts have not yet established that *Toussaint* applies to public employees. See *Engquist v Livingston Co,* 139 Mich App 280, 284, n 1; 361 NW2d 794 (1984). Accord, *Averitt v Cloon,* 796 F2d 195, 200, n 2 (CA 6, 1986). For support, plaintiffs cite *Michigan State Employees Ass'n v Dep't of Mental Health,* 421 Mich 152; 365 NW2d 93 (1984). However, we find no support in that decision for plaintiffs' claim. Rather, the *MSEA* decision lends support to defendants' argument that civil servants have property rights as opposed to contracts of employment. *MSEA, supra* at 160-161. Support for this view can also be found in *Cleveland Bd of Ed v Loudermill,* 470 US 532; 105 S Ct 1487; 84 L Ed 2d 494 (1985), where the Supreme Court recognized that classified civil servants possessed property rights in their continued employment. Accord, *Ariganello v Scott Paper Co,* 588 F Supp 484, 486 (ED Mich, 1982), where the court stated that the *Toussaint* doctrine is an obvious relative of the doctrine of constitutional procedural due process. The *Ariganello* court explained that, while the two concepts are similar, "*Toussaint* deals with private employment and the due process property component deals with public employment." *Id.*

As plaintiffs are civil servants who do not have contracts of employment either express or implied, the circuit court properly dismissed plaintiffs' count for breach of contract for failure to state a claim upon which relief could be granted. Further, amendment of the complaint in the manner requested would not resolve or cure the fatal defect in plaintiffs' pleadings. Summary dismissal under MCR 2.116(C)(8) was appropriate.

Next, plaintiffs contend that the trial court erred in concluding, as a matter of law, that 1985 PA 103 is not a bill of attainder. In the circuit court's July 17, 1986, opinion and order, it ruled that summary disposition based upon the pleadings was inappropriate on this count. Subsequently, defendants moved for summary disposition on this question under MCR 2.116(C)(10), which was granted on October 20, 1986.

Motions brought under MCR 2.116(C)(10) ask the court to test the factual foundation of plaintiffs' claim. *Abel v Eli Lilly & Co,* 418 Mich 311, 322; 343 NW2d 164 (1984), reh den 419 Mich 1201 (1984), cert den 469 US 833; 105 S Ct 123; 83 L Ed 2d 65 (1984). In granting a motion for summary disposition pursuant to this court rule, the court must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome. *Rizzo v Kretschmer,* 389 Mich 363, 371; 207 NW2d 316 (1973).

States are prohibited from enacting bills of attainder under art 1, § 10 of the United States Constitution. Additionally, the Michigan Constitution of 1963 provides in art 1, § 10 that no bill of attainder shall be enacted. A legislative act that applies to either named individuals or to easily ascertainable members of a group so as to punish them without a judicial trial is a bill of attainder. *United States v Lovett,* 328 US 303; 66 S Ct 1073; 90 L Ed 1252 (1946). It is essential to the success of a plaintiff's claim that the termination of benefits under the subject statute be validly characterized as "punishment" in the constitutional sense. Whether a legislative action amounts to punishment depends upon the attendant circumstances and the causes of the deprivation. *Garner v Bd of Public Works of City of Los Angeles,* 341 US 716;

71 S Ct 909; 95 L Ed 1317 (1951), reh den 342 US 843; 72 S Ct 21; 96 L Ed 637 (1951).

In *Selective Service System v Minnesota Public Interest Research Group,* 468 US 841, 852; 104 S Ct 3348; 82 L Ed 2d 632 (1984), the United States Supreme Court outlined three specific inquiries necessary to a determination whether a statute inflicts forbidden punishment:

> (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record "evinces a congressional intent to punish."

Applying this analytic framework to the instant case shows that plaintiffs' claim fails as a matter of law. First, plaintiffs have not been "punished" within the meaning of the constitution. While plaintiffs may have had legitimate expectations of continued employment as hearing referees, Act 103 does not deprive them of their civil service status. *Civil Service Comm, supra* at 623. Second, Act 103 reasonably can be said to further nonpunitive legislative purposes. As Justice LEVIN wrote, the "Legislature sought thereby to reduce the delay in adjudicating workers' compensation claims, which had been attributed to a large backlog in the WCAB resulting from the appeal of seventy-five to eighty-five percent of referee awards." *Civil Service Comm, supra* at 577. Third, the legislative history does not evidence an intent to punish. An excerpted statement quoted in plaintiffs' brief is a summary of arguments both for and against the legislation. We find this insufficient to establish a legislative intention to punish so as to render Act 103 a bill of attainder. Accordingly, the

circuit court did not err in granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) on this issue.

Finally, plaintiffs contend that the circuit court erred in denying plaintiffs' motion to compel pretrial discovery. Plaintiffs sought to depose Elizabeth Howe, the Director of the Department of Labor, and Kalmin D. Smith, a labor analyst for the House Republican Caucus. Plaintiffs claim here that they sought to depose Smith to obtain a complete history of Act 103 in order to ascertain legislative intent. In their memorandum in support of their motion to compel discovery, however, plaintiffs explained that the information sought from Smith was "believed to bear directly on the partisan considerations motivating removal of plaintiffs' jobs from the classified civil service." It appears, then, that plaintiffs sought to discover legislative motive as opposed to legislative intent.

The circuit court denied plaintiffs' motion to compel discovery and granted defendants' motion for a protective order in an opinion and order issued October 19, 1985. The circuit court concluded that the information sought to be discovered was not relevant to plaintiffs' claim and was not subject to discovery under MCR 2.302(B)(1). Further, the circuit court remained unpersuaded that the motives of the Legislature were at issue under plaintiffs' theory that the Legislature acted in bad faith and abolished their positions for partisan political considerations, citing this Court's decision in *Sheffield Development Co v City of Troy,* 99 Mich App 527, 530-533; 298 NW2d 23 (1980). The circuit court determined that plaintiffs failed to present any of the circumstances outlined in *Sheffield* that justify inquiry into legislative motives. The *Sheffield* Court held that the motive of the Legislature may be examined when fraud,

personal interest or corruption is alleged in the complaint. *Sheffield, supra* at 531. The circuit court also rejected plaintiffs' claim that Act 103 is the product of bad faith and partisan political considerations which justify inquiry into legislative motive, stating that "partisan political considerations often play a legitimate role in the adoption of legislation."

We believe the circuit court's denial of plaintiffs' motion to compel discovery was appropriate. The trial judge's resolution of this question was thoughtful and well reasoned. The circuit court's decision is consistent with this Court's decision in *Sheffield.* Judicial review of legislative enactments is limited by the separation of powers doctrine. As our Supreme Court noted in *Civil Service Comm, supra* at 626, the "Legislature is not powerless to eliminate a position in government once it is established." With this in mind, the circuit court did not abuse its discretion by denying plaintiffs' motion to compel discovery.

We affirm the circuit court's October 20, 1986, judgment. Accordingly, plaintiffs' constitutional challenge to §§ 206 and 213 of 1985 PA 103 is dismissed.

Affirmed.