**Marion BENNETT, Plaintiff,**

v.

**MARSHALL PUBLIC LIBRARY, James A. Schoenmeyer, William C. Mabin, Norma J. Church, Jane G. Morell and Suzanne E. Bedient, Defendants.**

**No. K89–10066 CA.**

United States District Court, W.D. Michigan, S.D.

Aug. 16, 1990.

Robert F. Best, Anne E. Campau, Best, Schmucker, Heyns & Klaeren, P.C., Jackson, Mich., for plaintiff.

Theresa Smith Lloyd, Plunkett & Cooney, P.C., Detroit, Mich., Micheal S. Bogren, Elizabeth A. Bennett, Plunkett & Cooney, P.C., Kalamazoo, Mich., for defendants.

## OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HILLMAN, Chief Judge.

This civil rights action stems from the purportedly wrongful discharge of plaintiff, Marion Bennett, from her position as director of the Marshall Public Library (the "Library"). Defendants are the Library and the five individuals who constituted the Marshall Public Library Board of Trustees

(the "Library Board") at the time of the discharge. Alleging a deprivation of her procedural due process rights under the Fourteenth Amendment, plaintiff seeks to recover damages pursuant to 42 U.S.C. § 1983. Plaintiff also requests relief under four related state law claims. Defendants have moved for summary judgment on all counts.

## FACTS

The underlying facts of this case are not in dispute. On January 1, 1969, plaintiff was hired as director of the Library by the Library Board. Plaintiff served in this capacity until November 5, 1988, when her employment was officially terminated. Although unofficial, plaintiff maintains that her actual termination occurred much earlier. The Board had contacted plaintiff in September, 1988, requesting that she retire from her position. A few weeks later the Board sent plaintiff a letter informing her that should she reject the offer of retirement, the Board intended to discharge her, describing her termination as "not negotiable". App. B to Motion for Summary Judgment. The letter further explained that regardless of her decision as to retirement, plaintiff's employment would be suspended as of October 17, 1988.

In response to plaintiff's inquiry, the Board issued a statement of reasons for her termination on October 25, 1988. Numerous and persistent conflicts with library staff and civic officials were cited. On November 3, 1988 the Board conducted a hearing to formally address plaintiff's situation. Plaintiff was given notice of the hearing and attended along with her attorney. Although plaintiff elected not to speak at the hearing, her lawyer addressed the Board on her behalf. At the conclusion of the meeting, and allegedly without further discussion, the Board voted to terminate plaintiff's employment effective November 5, 1988.

Plaintiff acknowledges that superficially this hearing appears to comply with the mandated due process requirements of notice and opportunity to be heard. However, plaintiff argues that the hearing was nonetheless constitutionally inadequate, as the decision to terminate her employment had been made prior to the hearing. Plaintiff further intimates that the Board was biased against her as a result of previous interactions and therefore was not a suitable decisionmaker for due process purposes.

In addition to alleging a federal claim pursuant to 42 U.S.C. § 1983, plaintiff asserts a parallel due process claim under the state constitution. Mich. Const., art. 8, § 9. Plaintiff also alleges claims under state common law for wrongful discharge, breach of contract, and intentional interference with contract. Defendants deny that plaintiff's employment was governed by contract, either express or implied. Instead, defendants maintain that plaintiff was employed "at will" and that the Board was entirely within its statutory authority in discharging plaintiff.

## STANDARD

Defendants have jointly moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate where no genuine issue as to any material fact exists, and the movants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This circuit has stated that "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia–Pacific Corp.*, 899 F.2d 533, 534 (6th Cir.1990). *See also Boddy v. Dean*, 821 F.2d 346, 349 (6th Cir.1987).

As moving parties, defendants bear the initial burden in a summary judgment motion of demonstrating an absence of evidence in the record supporting plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Banks v. Rockwell International*, 855 F.2d 324, 325 (6th Cir.1988). Moreover, plaintiff is entitled to the benefit of all justifiable inferences from the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, should defendant meet its bur-

den, plaintiff may not rest upon the allegations in her complaint, but must come forward with specific facts establishing a triable issue of material fact in order to survive summary judgment. Fed.R.Civ.P. 56(e); *Davis v. Robbs,* 794 F.2d 1129, 1130 (6th Cir.1986). Applying this standard, where plaintiff has submitted sufficient evidence to reasonably support a jury verdict in her favor, summary judgment is inappropriate.

## DISCUSSION

Section 1983 creates a federal cause of action to redress deprivations, under color of state law, of constitutionally protected liberty and property interests. *Chilingirian v. Boris,* 882 F.2d 200 (6th Cir.1989). To prevail on this claim, plaintiff must first demonstrate that she possessed a cognizable property interest in her continued employment as librarian. Plaintiff must further show that the process afforded her by the Library Board, or available to her under state law, was constitutionally inadequate. *Hudson v. Palmer,* 468 U.S. 517, 536–37, 104 S.Ct. 3194, 3205, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981).

### A. Property Interest:

Property interests are created and defined by sources independent of the constitution, such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Ramsey v. Bd. of Educ. of Whitley Cty, KY,* 844 F.2d 1268 (6th Cir.1988). A person's means of livelihood is commonly recognized as one of the most significant property interests. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Davis v. Scherer,* 468 U.S. 183, 192 n. 10, 104 S.Ct. 3012, 3018 n. 10, 82 L.Ed.2d 139 (1984). Therefore, breach of either an express or an implied employment contract by a state actor may support a claim under § 1983. *Loudermill,* 470 U.S. 532, 105 S.Ct. 1487; *Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972).

It is, however, well established that a public employee whose position is subject to termination at the will of his superiors does not have a constitutionally recognizable property interest in his continued employment. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Chilingirian,* 882 F.2d at 203. Defendants submit that plaintiff served as an "at will" employee because the Michigan code authorizes the Library Board to appoint and discharge library personnel without apparent limitation. In pertinent part, the statute provides:

> [The Library Board] shall make and adopt such by-laws, rules, and regulations for their own guidance and for the government of the library and reading room, as may be expedient, not inconsistent with this act ... Said board ... shall have power to appoint a suitable librarian and necessary assistants, and fix their compensation; and shall also have power to remove such appointees; and shall, in general, carry out the spirit and intent of this act in establishing and maintaining a public library and reading room.

M.S.A. 15.1665, M.C.L.A. 397.205.

Plaintiff responds that despite its statutory authorization, the Library Board nonetheless created an implied contract that her employment would not be terminated absent "just cause." Plaintiff maintains that the Library Board's oral representations at the time of her hiring, and statements contained in the Policies and Employment Guide give rise to her legitimate expectation that she would not be fired so long as her performance was satisfactory. Plaintiff concludes that the Library Board is therefore bound by those statements under *Toussaint v. Blue Cross and Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (Mich.1980).

### 1. Doctrine of Implied Contract in Public Employment Context:

Michigan courts have yet to conclusively establish whether public employees may rely on the implied contract theory established in *Toussaint.* In at least two instances the Michigan Court of Appeals has implicitly held *Toussaint* applicable in the public sector, *see Rasch v. City of East*

*Jordan,* 141 Mich.App. 336, 367 N.W.2d 856 (1985); *Dudkin v. Michigan Civil Service Comm'n,* 127 Mich.App. 397, 339 N.W.2d 190, 195 (1983) ("Although *Toussaint* involved private-sector employees, its rationale applies here [to state employees."]). However, later decisions have characterized the question as unsettled. *See Averitt v. Cloon,* 796 F.2d 195, 200 n. 2 (6th Cir.1986); *Matulewicz v. Governor of Michigan,* 174 Mich.App. 295, 304, 435 N.W.2d 785, 789 (1989). *See also, Engquist v. Livingston County,* 139 Mich. App. 280, 284 n. 1, 361 N.W.2d 794, 796 n. 1 (1984).

█ In the past year, two other federal district courts have grappled with this issue, only to reach divergent results. *See, Willoughby v. Village of Dexter,* 709 F.Supp. 781 (E.D.Mich.1989) (Cohn, J. finding *Toussaint* inapplicable to public employment) *and Merrell v. Bay County Metro. Trans. Authority,* 707 F.Supp. 289 (E.D.Mich.1989) (Churchill, J., allowing a public employee to rely upon the *Toussaint* doctrine.) I have carefully studied the Michigan Supreme Court's opinion in *Toussaint* and the cases which followed, and conclude that public employees may, in some circumstances, rely on the implied contract theory embraced in *Toussaint.* I believe that my conclusion furthermore reconciles the seemingly inapposite holdings of *Willoughby* and *Merrell.*

In finding that an employer's statements, policies, and procedures may give rise to an enforceable implied contract for employment, the Michigan Supreme Court in *Toussaint* relied heavily on the United States Supreme Court's decision in *Perry,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. *See Toussaint,* 292 N.W.2d at 894. The *Perry* opinion clearly endorsed the concept of an implied contract in the public employment context. Holding that a nontenured professor may nonetheless be able to establish a property interest in the renewal of his contract, the Court explained:

> A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to contin-
> ued employment unless sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in re-employment. For example, the law of contracts in most, if not all jurisdictions long has employed a process by which agreements, though not formalized in writing, may be "implied" [citation omitted.] ... A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure.

408 U.S. at 601–03, 92 S.Ct. at 2699–2700. The fact that this very passage from *Perry* was quoted in *Toussaint* strongly suggests that the Michigan Supreme Court intended its holding to apply in the public as well as the private sector. *See also Merrell,* 707 F.Supp. at 292.

I am, however, reluctant to broadly rule that *Toussaint* is applicable in all instances of public employment. I find Judge Cohn's rationale in *Willoughby* persuasive. Relying on *Johnson v. City of Menominee,* 173 Mich.App. 690, 694, 434 N.W.2d 211 (1988), Judge Cohn concluded that the statutory scheme delineating the terms of a public position may limit an official's authority to create an implied contract:

> A public official's power to contractually bind a municipality is expressly limited by the scope of his authority. The precise limits of that authority are generally determined by municipal ordinances governing the subject matter of the contract. If the officer's actions are beyond the bounds of his authority, the municipality is not bound.... Obviously, an existing council could not bind subsequent councils into a just-cause contract of indefinite duration with the village manager. To do so would negate the power of future councils to discharge the manager under the [ordinance].

709 F.Supp. at 787. Similarly, the Michigan Court of Appeals in *Johnson* explained:

[W]here the nature of an office or employment is such as to require a municipal board or officer to exercise supervisory control over the appointee or employee, together with the power of removal, such employment or contract of employment by the board, it has been held, is in the exercise of a governmental function, and contracts relating thereto must not be extended beyond the life of the board.

173 Mich.App. at 694, 434 N.W.2d 211. Based on this rationale, I find that *Toussaint* applies to public employment only where the resulting implied contract does not exceed the controlling body's statutory authority.

### 2. *Application of Toussaint:*

■ As discussed above, the Michigan code empowers the Library Board with the authority to appoint and remove the city librarian. M.S.A. 15.1665, M.C.L.A. 397.-205. Consequently, employment contracts entered into by the present Library Board must run concurrently with the term of the board or else be void as an unauthorized act. Likewise, statements or policies of one Library Board giving rise to what would constitute an implied contract for employment terminable only for cause under *Toussaint* in the private sector, will not create binding obligations on future Library Boards.

■ Plaintiff alleges two bases for her claim under *Toussaint.* First, plaintiff maintains that at the time she was hired, she was told that following a probationary period, she would be a full-time permanent employee. Defendants do not deny that plaintiff was hired on a "permanent," as opposed to "temporary" basis. *See* Morell Tr. at 39; Church Tr. at 24. Only the significance of this designation is disputed. Plaintiff asserts that she believed that serving as a permanent employee meant that she could only be discharged for cause. Plaintiff's Answer (Response) to Defendants' Motion for Summary Judgment, Dkt. No. 37 at 3.

Plaintiff's interpretation of "permanent" employment is contrary to clearly established precedent. Michigan law unequivocally adheres to the "general principal that contracts of permanent employment are terminable at the will of either party." *Chilingirian,* 882 F.2d at 205, *citing Toussaint,* 292 N.W.2d at 899, and cases cited therein. An employee's unfounded, subjective expectations do not give rise to a property interest in employment. *Toussaint,* 292 N.W.2d at 894–95; *Henry v. Hospital and Health Serv. Credit Union,* 164 Mich. App. 90, 416 N.W.2d 338, 340 (1987). Furthermore, even if plaintiff had been given direct assurances from the Library Board that she would not be fired but for cause, as I discussed above, plaintiff could not rely on *Toussaint* to support her claim of an implied contract. Oral promises of this sort made at the time of hiring would create an employment contract for an indefinite term, thereby exceeding the Library Board's statutory authority.

■ Plaintiff next alleges that statements contained in an employer's policy manual entitled her to a property interest in her continued employment. The document plaintiff refers to is actually an employment contract between the City of Marshall and its employees. In September, 1984 the Library Board adopted the agreement as its own "Policies and Employment Guide" (the "Guide").

Defendants do not dispute that the Guide provides that employees will only be disciplined or terminated for just cause. *See* Guide, Art. I, § 1, ¶ L; Art. IX, § 2. However, defendants counter that the just cause provision was not intended to apply to plaintiff, as she was considered "management" as opposed to an "employee". The intent and the subjective understandings of the parties as to the application of the Guide to plaintiff clearly raises a factual question which can not properly be decided on summary judgment. *Catrett,* 477 U.S. at 325, 106 S.Ct. at 2553. Furthermore, as plaintiff is entitled to the benefit of all reasonable inferences, *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, for the purposes of this motion, I will assume that the just cause guarantees applied to plaintiff.

Alternatively, defendants argue that the Guide was no longer in effect at the time of plaintiff's discharge. By its terms the agreement was to remain in effect until June 30, 1987. Guide, Art. XI. Plaintiff correctly notes, though, that the Guide contains an automatic continuation clause:

This Agreement will extend for annual periods [after June 30, 1987] unless either party shall serve upon the other written notice that it desires termination, revision, or modification.

Since the Library Board in no way renounced the Guide after its adoption, plaintiff could harbor reasonable expectations that it remained in effect.

Having found that the Guide could reasonably be construed to give rise to a legitimate expectation that plaintiff would only be discharged for cause, I now reach the question of whether *Toussaint* applies in this instance. As I have stated, a public employee can only rely on *Toussaint* where the implied contract created does not exceed the governing board's statutory authority. I find that in this instance, it did not.

The terms of the implied contract at issue here were that plaintiff would not be discharged absent cause for a period of one year. The Guide unambiguously provided that it could be unilaterally terminated or modified by either party each year. Therefore, the implied contract derived from the representations in the Guide, is similarly circumscribed. At most, plaintiff could only legitimately have anticipated that she would not be discharged absent just cause in the pending year. If the Library Board was authorized to enter into employment contracts for one year terms, thus, plaintiff has demonstrated a viable claim under *Toussaint.*

The Michigan code provides that a Library Board consisting of five members may be appointed by the city council. M.S.A. 15.1662; M.C.L.A. 397.202. Each appointment lasts five years, and the terms are staggered so that one new member is appointed each year. M.S.A. 15.1663; M.C. L.A. 397.203. Thus, each successive Library Board serves together for a mini-mum period of one year. Consequently, the term of the implied contract created by the Guide, does not exceed the term of the Library Board, and therefore does not infringe upon the statutory authority of future Library Boards to appoint and remove librarians. If at any time the Library Board elected not to adhere to the Guide's terms, it needed only serve written notice as provided.

In summary, I hold that the Michigan Supreme Court intended that the implied contract theory embodied in its decision in *Toussaint* be available in the public as well as the private employment context. However, I am also persuaded that, if confronted with the question, Michigan courts would not apply *Toussaint* in such a manner that terms which would be void if contained in an express contract, are enforceable under the implied contract theory. Consequently, only where the obligations of the implied contract do not exceed the state actor's statutory authority, can a public employee sustain an action under *Toussaint.* Applying this reasoning to the facts at hand, assurances made in the Guide gave rise to plaintiff's legitimate expectations of continued employment absent just cause for successive one year periods.

### B. Adequacy of State Remedies:

My ruling that plaintiff possessed a constitutionally protected property interest, requires that I address the issue of what process is due plaintiff under the Fourteenth Amendment and whether a federal cause of action pursuant to 42 U.S.C. § 1983 is the appropriate remedy.

█ Fundamental to the Due Process Clause "is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981) (*quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). However, defendants correctly note that in some situations, due process can be satisfied by conducting a hearing in state court after the constitutional deprivation has occurred. *See e.g.*

*Hudson v. Palmer,* 468 U.S. 517, 536–37, 104 S.Ct. 3194, 3205, 82 L.Ed.2d 393 (1984); *Parratt,* 451 U.S. at 543–44, 101 S.Ct. at 1917. In these instances, where an adequate remedy is available under state law, the court will not entertain a claim under § 1983. *See Hudson,* 468 U.S. at 533, 104 S.Ct. at 3203; *Parratt,* 451 U.S. at 541–44, 101 S.Ct. at 1916–17; *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Plaintiff does not dispute this line of cases, but argues that it is inapplicable in the employment context. The Supreme Court's holding in *Loudermill,* plaintiff suggests, mandates that whenever an employment interest is at stake, a pretermination hearing is required. 470 U.S. at 545, 105 S.Ct. at 1495.

Plaintiff's characterization of the holding in *Loudermill* is contrary to the law of this circuit. Thoroughly addressing this issue, the Sixth Circuit distinguished between an interest in one's means of livelihood and an interest which is merely related to one's employment:

> The Supreme Court has held repeatedly that the property interest in a person's means of livelihood is one of the most significant that an individual can possess ... Accordingly, because public employment contracts may involve a person's livelihood, due process usually requires that a public employee be provided with some kind of a predeprivation procedure before that employee may be fired ... However, even when a person's means of livelihood is connected to the deprivation claim, due process does not always require a predeprivation hearing or support a section 1983 action when any interest in employment is affected.

*Ramsey,* 844 F.2d at 1273–74. (Citations omitted.)

The *Ramsey* court further distinguished between an interest in employment for a specific term, such as plaintiff's claim here, and contracts for indefinite periods. While both involve a person's livelihood, the court noted that the loss resulting from a premature discharge where the term of employment is fixed, is easily defined and compen-

sated. In those instances, the court reasoned that postdeprivation hearings, in the form of state contract actions, adequately safeguard due process concerns. 844 F.2d at 1274. *See also, Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1320 (9th Cir.1984) (college superintendent terminated in violation of a four-year contract limited to state remedies); *Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981) (university professors discharged when positions eliminated from program must resort to state contract claims). *Cf. Rockford Principals and Supervisors Assoc. v. Board of Educ. of Rockford Sch. Dist.,* 721 F.Supp. 948, 954 n. 3 (N.D.Ill.1989) (finding adequacy of state remedies doctrine inapplicable to contract actions, but recognizing the contrary result in *Ramsey* ).

Plaintiff has failed to plead or prove that state damage remedies are inadequate to redress her injury, as required. *Parratt,* 451 U.S. 527, 101 S.Ct. 1908; *Sproul v. City of Wooster,* 840 F.2d 1267, 1270 (6th Cir.1988); *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983). Moreover, the holding in *Ramsey* virtually forecloses an argument that state contract actions would be inadequate. As I have explained, plaintiff's property interest in her continued employment extended only through June 30, 1989, when defendants were entitled to repudiate the Guide. This property interest in employment for a specific term "is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983." *Ramsey,* 844 F.2d at 1274–75. Adequate state remedies being readily available, thus, no violation of the Fourteenth Amendment has occurred. It is therefore unnecessary for me to address the adequacy of the hearing afforded plaintiff by the Library Board.

In light of the foregoing, defendants' motion for summary judgment is granted as to plaintiff's claim under § 1983. Count III will be dismissed accordingly.

C. State Law Claims:

Plaintiff's remaining four claims are based upon state law. Having eliminated

the only federal claim, comity compels me to relinquish jurisdiction over the pendent state claims. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988); *Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir.1988). Counts I, II, IV, and V will therefore be dismissed without prejudice. *Cohill*, 484 U.S. at 350, 108 S.Ct. at 618–19; *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### CONCLUSION

Plaintiff's claim under 42 U.S.C. § 1983 alleges that her procedural due process rights were deprived when defendants voted to terminate her employment as city librarian. Although plaintiff had no express employment contract, I have concluded that, drawing all reasonable inferences in her favor, the state common law doctrine of implied contract provides her with a legitimate property interest in her employment. However, a property interest in one's employment for a specific term can be adequately redressed in a state breach of contract action. Plaintiff's claim under § 1983 will therefore be dismissed. Issues of comity further require that plaintiff's remaining four state law claims be dismissed without prejudice to their being pursued in the state courts.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In accordance with the opinion filed this date,

IT IS ORDERED that defendants' motion for summary judgment is GRANTED.

Judgment is entered accordingly.