**Carl F. WILLOUGHBY, Plaintiff,**

**v.**

**VILLAGE OF DEXTER, a Michigan municipal corporation, and Paul S. Bishop, its President, Donna L. Fisher, its clerk, and Bruce Waggoner, Robert Stacey, Louis Ceriani, Susan Betz, John Ritchie, and Hannah Liddiard, Jointly and Severally, Defendants.**

**No. 87–74042.**

United States District Court,
E.D. Michigan, S.D.

March 9, 1989.

Vanzetti M. Hamilton, Hamilton & McDonald, P.C., Ypsilanti, Mich., for plaintiff.

Theresa Smith Lloyd, Plunkett & Cooney, P.C., Detroit, Mich., for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

This is a wrongful discharge case. In July of 1987, defendant Village of Dexter (village) discharged its village manager, plaintiff Carl Willoughby. In addition to wrongful discharge under *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), plaintiff alleges violations of his due process rights under the Fourteenth Amendment, age discrimination, and tortious interference with contract. Defendants Village of Dexter, village president, clerk, and members of the Village Council say that plaintiff was terminated for failure to follow instructions and allegedly abusive treatment of village residents and move for summary judgment. For the reasons

which follow, the motion is GRANTED and the case DISMISSED.

## I.

The following facts are not in dispute.

1. Plaintiff was hired on November 9, 1981 to act as village manager. His duties included formulation of the annual budget, the purchase of supplies and equipment, administration of contracts and monitoring compliance with regulations and ordinances. The initial contract ran for a term of two years, from September 1, 1981 to June 1, 1983.

2. After the expiration of the first contract, plaintiff entered into second contract. The terms of the second contract were substantially identical to the first; it ran from June 1, 1983 to June 1, 1985.

3. On June 1, 1985, plaintiff entered into a third contract whose terms were substantially identical to the first: it ran from June 1, 1985 to June 1, 1987.

4. By a letter dated February 27, 1987, defendant Paul S. Bishop (Bishop), the president of the village informed plaintiff that effective June 1, 1987, the village would not renew his employment contract and that thereafter he would be an at-will employee.

5. By a letter dated June 18, 1987, Bishop informed plaintiff that his employment with the village was terminated.

6. By a letter dated June 19, 1987, plaintiff's attorney informed Bishop that the termination of plaintiff was ineffective because it failed to comply with the requirements of Section 2 of the Village Manager Ordinance. Plaintiff's attorney said that plaintiff could only be removed by a majority vote of the members of the council at a public meeting, with thirty days notice to the plaintiff prior to removal by a resolution stating its intention to remove him and reasons therefor. He also said that the ordinance further gave plaintiff the right to request a public hearing before termination. The lawyer correctly described the provisions of the ordinance, as will be discussed, *infra.*

7. On June 22, 1987, the council adopted a resolution stating its intention to remove plaintiff effective July 22, 1987. The stated reason for removal was that plaintiff "failed to carry out instructions of the Village President and Council."

8. By a letter dated July 13, 1987, Bishop responded to plaintiff's request for more particulars as to the reasons for termination. Bishop stated the following reasons:

a. failure to order a secretary working for the village to work both Mondays and Tuesdays during the summer pursuant to the Council's instruction;

b. failure to upgrade and revise councilpersons' packets distributed before meetings despite the request to do so;

c. failure to upgrade the filing system in the village office despite numerous requests to do so;

d. furnishing an erroneous list of street names to the village engineer for use in the industrial park;

e. unauthorized order of a rubber stamp and an erroneous statement that the clerk had requested the stamp;

f. angry statements to Bishop following a disagreement at a council meeting;

g. rude and condescending behavior toward village residents.

The letter concluded that "this list does not include all items regarding your performance as village manager that the Council has deemed unsatisfactory, it is a more specific listing of the reasons the Council has voted to remove you as Village Manager."

9. On July 20, 1987, the council held a hearing at which plaintiff and his attorney were present. Plaintiff neither spoke at the hearing nor presented written evidence. Plaintiff's attorney did cross examine the village's only witness, Bishop. Bishop did not permit any of the other council members to testify, stating that he spoke for the village and the council.

10. Following the hearing, the council voted to affirm the previously accepted resolution to terminate plaintiff, effective July 22, 1987.

## II.

### A.

Plaintiff claims that his termination deprived him of liberty and property in violation of the fourteenth amendment and 42 U.S.C. sec. 1983. He argues that a public employee has a property right in continued employment which cannot be taken away without due process of law. Plaintiff says that the biennial renewal of his contract since 1981 created a legitimate expectation of continued employment which constituted a protected property interest.

### B.

■ A public employee's property interest in continued employment does not emanate from the bare fact of public employment itself. Rather, property interests "are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law...." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), *quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972).

In order to establish a property interest in continued employment, a public employee must be able to point to some statutory or contractual right conferred by the state which would be violated by a termination. This is generally a fact determination. For example, in *Loudermill,* the Supreme Court held that an Ohio statute providing that classified civil servants could only be removed for good cause conferred a property right on plaintiff which could only be deprived by due process of law. Similarly, in *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court held that a property right in continued employment could be created by a "de facto tenure system" whereby annual employment contracts were universally renewed absent good cause. *Id.* at 599–602, 92 S.Ct. at 2698–2700. Conversely, in *Roth,* the Court refused to recognize a property right in the renewal of an employ-

ment contract where plaintiff could not point any contractual understanding that his contract would be renewed. *Roth, supra* 408 U.S. at 577–579, 92 S.Ct. at 2709–2710.

### C.

Here, the source of plaintiff's property interest in the renewal of his contract can have only two sources—state statutes and local ordinances or the contract itself. The Court finds that none of these sources conferred a property interest as a matter of law.

■ The only statute or ordinance governing the terms and conditions of plaintiff's employment is the Village Manager Ordinance. This ordinance establishes the office of village manager, provides for appointment, compensation, and discharge, and specifies the duties and activities. Section II of the ordinance states in relevant part:

[t]he President shall ... appoint ... a Village Manager to serve for an indefinite period.... The Village Manager may be removed by a majority vote of the members of the [Village] Council as herein provided. At least thirty days before the removal of the Manager the Council shall pass a resolution stating its intention to remove him and the reasons therefor, a copy of which shall be served forthwith on the manager, who may within ten days demand a public hearing in which event a final resolution shall not be adopted until such public hearing has been held. Upon passage of a resolution stating the Council's intention to remove the Manager, the Council may suspend him from duty, but his pay shall continue until his removal. The action of the Council in removing the Manager shall in any case be final.

Although the ordinance provides for a specific termination procedure, which the council followed, there is no language stating that the council may only remove the manager for good cause.[1] The ordinance is

---

1. Contrast the language of the Village Manager Ordinance with the language of the statute in

silent as to the need for grounds for removal, or what they might be. This silence suggests that the council reserved the right to determine whether to remove the manager. There is no basis for holding that the Village Manager Ordinance gave plaintiff a property right in continued employment.

■ Similarly, the terms of plaintiff's contract do not provide a basis for finding he had a property interest in continued employment. The contract set out the parameters governing termination. Paragraph 8 of the contract provides:

Early Termination:

Throughout the term of this contract, the Manager shall be subject to discharge for good and just causes, provided, however, that Council does not arbitrarily or capriciously call for his dismissal and that the Manager shall have the right of written charges, notice of hearing, and a fair hearing before the Council in either open or closed session as chosen by the Manager. The Manager may be represented by legal counsel at his own expense. Disability for more than six continuous months may be good and just cause for termination.

As the title to the paragraph makes clear, the just cause provision of the contract applies only to *early* termination, i.e. termination prior to the expiration of the term of the contract. Paragraph 1, entitled "Contract Period," expressly provides that "[t]he terms herein commence at 12:01 a.m. on June 1, 1985, and continue until 12:01 a.m. on June 1, 1987." Accordingly, the good cause provision extended only until the expiration of the term of the contract. Thereafter, plaintiff became an at-will employee and was subject to discharge for any reason or for no reason at all, subject only to a right to a hearing prior to action by the council.

■ Plaintiff's claim that the two previous renewals of his biennial contract constituted an implied contract not to discharge him without cause lacks merit. While it may be logically argued the biennial contract renewed twice before placed plaintiff squarely between the facts of *Perry* and *Roth*, such is not the case. In *Perry*, the Supreme Court held that there was an implied contract where plaintiff's annual contract had been renewed seven previous times, while in *Roth* the Supreme Court held that there was no implied contract where an employee was hired for only a single year pursuant to a renewable annual contract.[2] There is nothing in the previous renewals of the contract which gave plaintiff a property right to continued employment.

### III.

The Village Manager Ordinance required plaintiff be given a hearing before he could be terminated as village manager. Assuming the requirement gave plaintiff a property interest in the position, the hearing he was given satisfied the requirements of due process.

### A.

Precisely what kind of hearing will satisfy the requirements of due process is not perfectly clear. In *Loudermill*, the Supreme Court provided its most explicit statement to date as to "how much process

*Loudermill*, which the Supreme Court held was sufficient to confer a property right in continued employment. The statute provided that no classified civil servant could be removed except for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections of the rules of the director of administrative services or the commission or any other act of misfeasance, malfeasance, or nonfeasance in office.
*Loudermill, supra* 470 U.S. at 539 n. 4, 105 S.Ct. at 1491 n. 4.

**2.** In making this comparison, that the Court is mindful of the additional facts in *Perry* which led the Supreme Court to recognize a property interest in contract renewal. In addition to having been rehired for seven years, plaintiff alleged an elaborate de facto tenure system whereby employees were generally retained unless there was good cause not to renew their contracts. The plaintiff there was able to point to express statements in the college's official Faculty Guide and the Board of Regents Policy Paper 1 to support his reasonable expectation of good cause employment.

is due" in the context of the discharge of a public employee. The Court stated:

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why a proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill, supra* 470 U.S. at 546, 105 S.Ct. at 1495 (cites omitted).

### B.

 Prior to his termination, plaintiff was afforded written notice of the charges against him, an explanation of the evidence, and an opportunity to present his side of the story.[3] That plaintiff chose not to present his side of the story at the hearing is of no moment. All that due process required is an *opportunity* to be heard. Similarly, plaintiff's specific objections to the conduct of the hearing does not render the process afforded him flawed. The fact that defendants may not have furnished plaintiff detailed accounts of particular incidents did not render the hearing defective. Due process does not require strict adherence to the Federal Rules of Civil Procedure and the Federal Rules of Evidence in every pretermination hearing. *Loudermill, supra.* Rather, the Supreme Court has interpreted the requirements of due process to be more flexible. *See Mat-*

*thews v. Eldridge, supra.* Here, the conduct of the hearing was well within the permissible limits.

### IV.

 Plaintiff has failed to present any colorable evidence whatever in support of his age discrimination claim. In order to make out a prima facie case of age discrimination, plaintiff must prove that (1) he was a member of a protected class; (2) that he was discharged; (3) that he was replaced by a younger person; (4) that he was qualified for the job. *Wilkins v. Eaton Corp.,* 790 F.2d 515, 520 (6th Cir.1986). Once plaintiff has made out a prima facie case, the burden of proof shifts to defendant to articulate a legitimate, nondiscriminatory reason for the discharge. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981). If defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the articulated business reason is merely pretextual.

Plaintiff has demonstrated only that he was discharged. Nowhere in any of plaintiff's papers is there a statement of his age or an assertion that he is within the protected class. Neither is there any assertion that plaintiff was replaced by a younger person. Accordingly, plaintiff has failed to make out a prima facie case of age discrimination as a matter of law.

### V.

 Plaintiff may not maintain a wrongful discharge claim against his former employers under *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579,

---

**3.** Plaintiff cites *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) in support of the proposition that due process required that he be afforded (1) timely written notice detailing the reasons for the proposed administrative action; (2) an effective opportunity to defend by confronting adverse witnesses and by being allowed to present witnesses; (3) a hearing examiner other than the individual who made the decision or determination of review; and (4) a written though informal statement of findings.

Plaintiff's reliance on *Goldberg* is misplaced. As the Supreme Court made clear in *Matthews*

*v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the amount of process due in any given context will vary with the circumstances and the respective interests of the state and individual. In *Loudermill,* the Supreme Court explained that *Goldberg* was a special case because of the importance of the individual interests involved. *Id.* 470 U.S. at 545, 105 S.Ct. at 1495. The due process requirements for pretermination hearing for a public employee are considerably lower. *See id.*

292 N.W.2d 880 (1980). Because of the unique characteristics of public employment, the doctrine of implied just-cause employment contracts is inapplicable to public or municipal employers. *Johnson v. City of Menominee,* 173 Mich.App. 690, 434 N.W.2d 211 (1988).

A public official's power to contractually bind a municipality is expressly limited by the scope of his authority. The precise limits of that authority are generally determined by municipal ordinances governing the subject matter of the contract. If the officer's actions are beyond the bounds of his authority, the municipality is not bound. *See Johnson, supra* at 694, 434 N.W.2d 211.

In this case, the Village Manager Ordinance vested authority in the president, with the consent of the council, to hire the village manager. The manager could be discharged by a majority vote of the council, after a hearing. Obviously, an existing council could not bind subsequent councils into a just-cause contract of indefinite duration with the village manager. To do so would negate the power of future councils to discharge the manager under the Village Manager Ordinance. As the Court of Appeals noted in *Johnson,*

> where the nature of an office or employment is such as to require a municipal board or officer to exercise supervisory control over the appointee or employee, together with the power of removal, such employment or contract of employment by the board, it has been held, is in the exercise of a governmental function, and contracts relating thereto must not be extended beyond the life of the board.

*Id.* at 694, 434 N.W.2d 211. Accordingly, even if the council did intend to encourage plaintiff to believe that he would not be discharged except for cause, it lacked the power to bind the village in this way and the alleged contract would be void.[4]

---

**4.** The Court is aware of at least one decision arguably construing *Toussaint* to apply to public employment. *See e.g. Merrell v. Bay County Metropolitan Transportation Authority,* 707

## VI.

Because a tortious interference with contract claim involves factual determinations which are closely related to wrongful discharge claims, summary judgment must also be granted on this claim. In order to make out a claim for tortious interference with contract, plaintiff must show (1) the existence of a contract; (2) the breach of a contract; and (3) the instigation of the breach by the alleged tortfeasor without justification. *Woody v. Tamer,* 158 Mich. App. 764, 774, 405 N.W.2d 213 (1987). Since plaintiff has no just-cause contract claim, he can make out no claim for tortious interference.

## VII.

In light of the foregoing, defendant's motion for summary judgment is GRANTED and the case is DISMISSED.

SO ORDERED.

F.Supp. 289 (E.D.Mich.1989). To the extent that today's decision is inconsistent with *Merrell,* the Court declines to follow it.