THORIN v BLOOMFIELD HILLS BOARD OF EDUCATION

Docket No. 141676. Submitted October 20, 1993, at Detroit. Decided February 22, 1994, at 9:30 A.M.

Fred D. Thorin brought an action in the Oakland Circuit Court against the Bloomfield Hills Board of Education and others, alleging wrongful discharge after the board voted not to renew the last of a series of employment contracts under which he served as superintendent of the Bloomfield Hills Public Schools for terms of two years each. The plaintiff alleged that the defendants had assured him employment until retirement and that, if his employment was terminated because of unsatisfactory performance, he should have been provided a one-year program of assistance during which to show improvement, as provided in an employment handbook. The defendants moved for summary disposition, contending that the plaintiff's employment was governed solely by the terms of his contract and that the handbook did not apply to the plaintiff. The court, Robert L. Templin, J., denied the motion. The Court of Appeals, GRIBBS, P.J., and HOLBROOK, JR., and REILLY, JJ., affirmed in an unpublished opinion per curiam, decided October 3, 1989 (Docket No. 105031), stating that the plaintiff's theory of liability is analogous to that addressed in *Touissant v Blue Cross & Blue Shield of Michigan*, 408 Mich 579 (1980). A jury subsequently rendered a verdict for the plaintiff, awarding him damages of $558,000, comprising six years of his salary at $88,000 a year and an early retirement bonus of $30,000. The defendants appealed.

The Court of Appeals *held:*

1. The trial court did not err in denying the defendants' motion for judgment notwithstanding the verdict. The jury

REFERENCES

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 327, 331, 333; Municipal County, School, and State Tort Liability § 639; Wrongful Discharge § 90.

See ALR Index under At Will Relationship; Discharge from Employment or Office.

reasonably could have concluded that the decision not to renew the plaintiff's employment contract was based on unsatisfactory performance.

2. The doctrine of law of the case requires the Court of Appeals to hold that the trial court did not err in instructing the jury in accordance with *Touissant.*

3. *Touissant* applies to public employees as long as the resulting implied contract does not violate the employer's statutory authority. In this case, MCL 380.131(1); MSA 15.4132(1), which limits employment contracts of public school superintendents to no more than three years in duration, would not be violated in allowing a one-year extension of the plaintiff's final two-year contract for a program of assistance for unsatisfactory performance. Accordingly, the plaintiff is entitled to damages of $118,000, consisting of one-year's salary of $88,000 and the $30,000 early retirement bonus. On remand, the plaintiff may consent to the entry of a judgment for $118,000 plus interest and costs or request, and be allowed, a new trial solely on the issue of damages.

4. The remaining issues raised by the defendants are without merit or were not properly preserved for appellate review.

Affirmed in part, reversed in part, and remanded.

CORRIGAN, P.J., concurring, stated that the scope and nature of wrongful discharge remedies available to public sector employees warrants Supreme Court review.

MASTER AND SERVANT — EMPLOYMENT CONTRACTS — PUBLIC EMPLOYEES

A wrongful discharge claim based on *Touissant v Blue Cross & Blue Shield of Michigan,* 408 Mich 579 (1980), can be maintained by a public sector employee only where the resulting implied contract does not exceed the employer's statutory authority.

*Googasian, Hopkins, Hohauser & Forhan* (by *George A. Googasian*) (*Bendure & Thomas*, by *Mark R. Bendure* and *Amy R. Snell*, of Counsel), for the plaintiff.

*Butzel Long* (by *Virginia F. Metz* and *David B. Calzone*), for the defendants.

Before: Corrigan, P.J., and Neff and R. J. Co-
lombo, Jr.,* JJ.

R. J. Colombo, Jr., J. Defendants appeal as of
right a jury verdict awarding the plaintiff damages
of $558,000 on his wrongful discharge claim. A
judgment including costs and interest was entered
on April 10, 1991, in the amount of $1,121,308.66.
We affirm in part and reverse in part.

I

The plaintiff was hired as superintendent for
defendants' school district on July 1, 1970. Plain-
tiff worked under a series of employment contracts
and contract supplements. On May 17, 1983, plain-
tiff signed a letter agreement supplementing the
employment contract of July 1, 1980, which ex-
tended his employment to June 30, 1985.

In June 1984, the president of the school board,
Edward Fleischmann, called the plaintiff and ad-
vised that he did not believe plaintiff's contract
would be renewed. Plaintiff mentioned he had
rights under the administrative handbook and
asked about the possibility of a six-month exten-
sion. Pursuant to Fleischmann's instructions,
plaintiff made a written request for a six-month
extension in a memorandum dated July 6, 1984.
The memorandum also set forth plaintiff's claim
that under the terms of the handbook he was
entitled to one year's notice before termination or
nonrenewal for unsatisfactory performance.

The handbook for July 1, 1983, through June 30,
1986, provided in pertinent part:

Terms of Employment
Subject to the limitations listed below, the Board

* Circuit judge, sitting on the Court of Appeals by assignment.

of Education agrees that each administrator will be employed for a term of two years, commencing July 1, 1979, and continuing from year to year thereafter unless notification is given by either party, to comply with law as provided in Act 269, PA 1955, as amended by Act 247, PA 1970.

* * *

2. *Unsatisfactory Performance:* A program of assistance shall be instituted as soon as practicable, but no later than February 1 of either year of the administrator's contract. If after one year of such assistance program, the administrator's performance is not satisfactory, then, upon 90-day written notice prior to the terminal date of the administrator's contract, employment may be terminated.

Plaintiff and defendants attempted to negotiate a resolution under which plaintiff would be granted a six-month extension as a consultant. Unfortunately, the parties could not agree upon compensation.

On December 4, 1984, the board of education voted unanimously not to renew or extend plaintiff's contract. In a letter dated December 10, 1984, the board advised the plaintiff of its action. This lawsuit ensued.

II

The first issue raised by the defendants is that the trial court erred in failing to grant their motion for judgment notwithstanding the verdict. They contend that the undisputed evidence established that unsatisfactory performance was not the reason for defendants' failure to extend or renew plaintiff's contract. Rather, this action was taken because of a change in membership of the board and its belief that it was time for different leadership. Furthermore, plaintiff had been planning

retirement, and granting plaintiff a six-month extension and finding a new superintendent in the middle of the school year were not in the best interest of the school district.

In reviewing a trial court's failure to grant a defendant's motion for judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the plaintiff. *Matras v Amoco Oil Co,* 424 Mich 675, 681; 385 NW2d 586 (1986). If reasonable jurors could honestly have reached different conclusions, neither the trial court nor this Court may substitute its judgment for that of the jury. *Reisman v Regents of Wayne State Univ,* 188 Mich App 526, 538; 470 NW2d 678 (1991).

During opening statement, counsel for defendants suggested that because plaintiff had been the superintendent for a long time, there was a tendency to "cut corners." As an example, counsel stated that the school board paid plaintiff money for a country club membership without action by the school board at a public meeting and official minutes. Counsel told the jury that it would be satisfied with the proofs that this was the board's motivation for what occurred.

During the trial, the school district's business manager testified there was no other administrator or employee in the school district who was paid wages on verbal directions, spent more for insurance or any other item than the contract provided, and charged personal expenses to the school district. This evidence was to demonstrate that plaintiff used school district funds without legitimate authorization.

Finally, there was evidence that once plaintiff filed this lawsuit, the defendants filed a counterclaim. It alleged that plaintiff received pay in-

creases without proper authorization of the school board. Reasonable jurors could have concluded that the decision not to extend or renew plaintiff's contract was due to unsatisfactory performance relating to unauthorized expenditures. The trial court properly denied defendants' motion for judgment notwithstanding the verdict.

### III

The next issue raised by defendants is that this case was tried under an erroneous legal theory when the trial court improperly instructed the jury in accordance with *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). They contend that the trial court was not bound by this Court's prior opinion in *Thorin v Bloomfield Hills Bd of Ed,* (Docket No. 105031) (*Thorin I*), unpublished opinion per curiam, decided October 3, 1989, because the opinion was issued without the benefit of a full development of the facts. Defendants rely upon this Court's statements in *Thorin I* that "Plaintiff's theory of liability is analogous to that addressed in *Toussaint*" and "may evolve into a *Toussaint*-type of contractual entitlement." Accordingly, defendants believe *Thorin I* did not establish the law of the case.

The doctrine of the law of the case arises where an appellate court has passed on a legal question and remanded the case for further proceedings. Under the doctrine, the legal questions determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. *CAF Investment Co v Saginaw Twp,* 410 Mich 428, 454; 302 NW2d 164 (1981). The law of the case does not apply to an issue that was raised but not decided by an appellate court. *Hill v Clark Equipment Co,* 85 Mich App 1, 3; 270 NW2d 722 (1978).

In *Thorin I,* our Court held that plaintiff's con-
tractual rights could be determined from his writ-
ten contracts and the handbook under a theory of
liability analogous to *Toussaint.* We cited *Tous-
saint, supra* at 614-615, for the principle that the
employer's statements of policy contained in an
employment manual can give rise to contractual
rights. We rejected defendants' claim that *Tous-
saint* did not apply to a fixed-term contract subject
to periodic renewal.

To the extent defendants are contending that
*Toussaint* does not apply to a fixed-term contract
that has expired and the written contracts and
handbook established that the handbook did not
apply to plaintiff, the doctrine of the law of the
case applies. These issues were considered in *Tho-
rin I* and may not be reconsidered in this appeal.
Moreover, defendants' failure to object to the jury
instructions precludes appellate review absent a
miscarriage of justice. *Moghis v Citizens Ins Co of
America,* 187 Mich App 245, 251; 466 NW2d 290
(1991). We find no miscarriage of justice.

IV

Defendants have raised the issue that *Toussaint*
does not apply in this case because *Toussaint* does
not apply to public employees, all actions by the
school board must be approved by a majority vote
at a public hearing, MCL 380.1201(1); MSA
15.41201(1), and the school board's contract with
the superintendent shall be for a term not to
exceed three years. MCL 380.132(1); MSA
15.4132(1). Defendants assert implied contracts are
inconsistent with these statutory requirements im-
posed upon a school board.

A threshold issue is whether *Thorin I* precludes
consideration of this issue. We conclude that the

law of the case does not bar consideration of this issue because it was not decided in *Thorin I.*

In *Manning v City of Hazel Park,* 202 Mich App 685; 509 NW2d 874 (1993), this Court held that *Toussaint* applies to public employees. This was premised upon the Michigan Supreme Court's reliance in *Toussaint* on *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972). In *Perry,* the United States Supreme Court approved the concept of a constitutionally protected interest in continued employment based on an implied contract where the plaintiff was a public employee. Accordingly, *Manning* concluded that a public employee may maintain a wrongful discharge claim based on *Toussaint.*

*Manning* did not address whether there is any limitation on *Toussaint's* application to public employees. Three cases in the United States District Court of Michigan have addressed the issue of *Toussaint's* applicability to public employees. See *Merrell v Bay Co Metropolitian Transportation Authority,* 707 F Supp 289 (ED Mich, 1989); *Willoughby v Village of Dexter,* 709 F Supp 781 (ED Mich, 1989); *Bennett v Marshall Public Library,* 746 F Supp 671 (WD Mich, 1990). These cases also provide guidance with regard to whether there are limitations on *Toussaint's* application to public employees.

In *Merrell,* the district court noted that the Michigan Supreme Court explicitly recognized that the genesis of the implied contract was the United States Supreme Court's decision in *Perry, supra. Perry* clearly sanctioned the concept of a constitutionally protected interest in public employment based on an implied contract. The district court concluded that *Toussaint's* heavy reliance on *Perry* offered strong support for extending implied

contracts to public employees in Michigan. *Merrell, supra* at 292.

In *Willoughby, supra,* the district court concluded that *Toussaint* did not apply to public employees. The plaintiff was removed as village manager. An ordinance authorized the council to remove the village manager by majority vote. The ordinance was silent with respect to the need for grounds for removal. The district court determined that the council could not bind future councils by entering into a just-cause contract for an indefinite duration with the village manager. This would negate the power of future councils to discharge under the ordinance. *Willoughby, supra* at 787.

In *Bennett, supra,* the district court again faced the issue of *Toussaint's* application to public employees and reconciled the holdings in *Merrell* and *Willoughby.* The court determined that *Toussaint* applied to public employees only where the resulting implied contract does not exceed the controlling body's statutory authority. In *Bennett* the plaintiff was the city's librarian and claimed that she could only be removed for just cause. A state statute authorized a city's library board to remove the librarian. The district court found that the plaintiff stated a *Toussaint* claim as a public employee. This was because a one-year employment contract for just cause did not violate the statutory authority of the library board to remove the librarian and would not create binding obligations on future library boards. *Bennett, supra* at 671.

The reasoning of the district court in *Bennett* is persuasive. It is reasonable to assume, as did our Court in *Manning,* that the Michigan Supreme Court intended *Toussaint* to apply to public employees in light of its reliance upon *Perry.* Likewise, a public employee cannot claim an implied

contract where it violates the controlling body's statutory authority.

Plaintiff's claim of a one-year program of assistance for unsatisfactory performance under the terms of the handbook was consistent with MCL 380.1201(1); MSA 15.41201(1), requiring school board action by a majority vote at a public meeting. Defendants did not assert that the handbook had not been adopted in accordance with this statute. Rather, they stated that the handbook did not apply to plaintiff. Defendants' erroneous belief does not mean that the handbook was not adopted by a majority vote of the school board at a public . meeting.

Defendants did not argue at trial that plaintiff's contract extension to June 30, 1985, had not been adopted in accordance with MCL 380.1201(1); MSA 15.41201(1). Although the defendants initially asserted this in their counterclaim, the assertion was withdrawn before trial.

Plaintiff's claim to damages through June 30, 1986, did not violate the provisions of MCL 380.132(1); MSA 15.4132(1), which limits contracts with the superintendent to a term not to exceed three years. Plaintiff's last employment contract was extended for two years to June 30, 1985. An additional one-year program of assistance under the handbook would extend the contract to three years and not violate the provisions of MCL 380.132(1); MSA 15.4132(1).

However, plaintiff argued at trial that he was entitled to damages after June 30, 1986. This argument was based upon plaintiff's expectation of continued employment until retirement absent just cause for termination and a program of assistance.

With a two-year contract extended one year for a program of assistance, plaintiff could only have

legitimately expected that he would not be discharged absent just cause until June 30, 1986. Moreover, MCL 380.132(1); MSA 15.4132(1) only authorized a contract for three years. The defendants had no authority to approve a contract for more than three years. Plaintiff was not entitled to damages beyond June 30, 1986.

The jury was given various alternatives for assessing damages. One alternative was to award damages of $88,000 a year for six years and a $30,000 early retirement benefit for a total of $558,000. It is reasonable to conclude that the jury computed damages under this method because this was the amount of its verdict. Plaintiff was entitled to damages of $88,000 for lost salary from July 1, 1985, through June 30, 1986, and $30,000 for an early retirement benefit for a total of $118,000.[1] If plaintiff consents in writing to the entry of a judgment in the amount of $118,000 plus interest[2] and costs within twenty-eight days after the expiration of the time limit for pursuing an appellate remedy as of right, a judgment shall enter. Otherwise, plaintiff is entitled to a new trial solely on the issue of damages.

V

Defendants also contend that the evidence that the handbook applied to plaintiff did not meet the clear and unequivocal standard set forth in *Rowe v Montgomery Ward & Co, Inc,* 437 Mich 627, 645; 473 NW2d 268 (1991). In addition, they claim that

[1] Any retirement benefits plaintiff received between July 1, 1985, and June 30, 1986, shall not be deducted from the $118,000 because no evidence was presented with regard to how much plaintiff received.

[2] Interest shall be computed in accordance with *Central Michigan Univ Faculty Ass'n v Stengren,* 142 Mich App 455, 461; 370 NW2d 383 (1985).

the testimony of individual school board members regarding this issue was made without authority and could not bind the defendants. Defendants assert that it was error to fail to give their proposed instructions relating to the authority of the school board.

In *Rowe, supra,* the Michigan Supreme Court held that oral statements of job security must be clear and unequivocal to overcome the presumption of employment at will. *Id.* at 645. This rule has no application to the instant case. This case did not involve a claim of employment at will or oral statements of job security. It presented a factual dispute regarding whether the unsatisfactory performance provision in the handbook applied to plaintiff. The testimony of school board members, employees, defendants' former attorney, and plaintiff sufficiently supported the jury's conclusion that the provision in the handbook applied to plaintiff.

The testimony of school board members regarding this issue was not offered to demonstrate that defendants had adopted the handbook. As noted above, that was never disputed at trial. Rather, the testimony was for the purpose of resolving the issue of the application to plaintiff of the unsatisfactory performance provision in the handbook. There was no error in failing to instruct regarding the requirements for official board action.

VI

Defendants raise a number of issues relating to evidentiary rulings and closing argument. They argue that the trial court erred in allowing evidence regarding plaintiff's bad-faith claim premised upon defendants' counterclaim. Error may not be predicated upon a ruling admitting evidence

unless a substantial right of the party was affected and a timely objection was made. *Gainey v Sieloff,* 154 Mich App 694, 700; 398 NW2d 498 (1986); MRE 103(a)(1). In the instant case, no objection was made. No substantial right of the defendants was affected. The evidence was admissible to prove that plaintiff's contract was not renewed because of unsatisfactory performance. It was also admissible to prove that plaintiff attempted to mitigate his damages, but the counterclaim made it difficult for him to obtain new employment.

Defendants contend that the trial court erred in allowing two witnesses to testify with regard to legal theories, opinions, and cases, and in admitting into evidence a memorandum discussing legal issues. Generally, expert witnesses may not testify with regard to domestic law because it is within the exclusive responsibility of the trial judge to find and interpret the applicable law. *Meehan v Michigan Bell Telephone Co,* 174 Mich App 538, 551; 436 NW2d 711 (1989). However, when the expert's opinion states the law consistent with the applicable law and the trial court's jury instructions, the error is harmless. *Id.* Defendants have failed to point out any contradiction between the testimony presented and the trial court's instructions.

Defendants' remaining objections to the admission of evidence were not preserved with a proper objection and do not affect a substantial right. *Gainey, supra* at 700; *Perry v Hazel Park Harness Raceway,* 123 Mich App 542, 546; 332 NW2d 601 (1983), MRE 103(a)(1). Likewise, defendants waived any error relating to closing argument by not objecting. A curative instruction could have removed the claimed error. *Bourke v North River Ins Co,* 117 Mich App 461, 466; 324 NW2d 52 (1982).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

NEFF, J., concurred.

CORRIGAN, P.J. *(concurring).* I concur in the majority opinion, but write separately because the question of the scope and nature of wrongful discharge remedies available to public sector employees warrants Supreme Court review. *Manning v City of Hazel Park,* 202 Mich App 685; 509 NW2d 874 (1993), recently held that a wrongful discharge claim based on *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), is available to public sector employees. Pursuant to Administrative Order No. 1990-6, extended by Administrative Orders Nos. 1991-11, 1992-8, and 1993-4, I am constrained to follow *Manning.* Moreover, in an unpublished opinion in this case, our Court directed the circuit court to apply *Toussaint.* I would not deviate from the law of this case.

Were this question still open, I would follow the analytic approach recommended by Judge Avern Cohn in *Willoughby v Village of Dexter,* 709 F Supp 781 (ED Mich, 1989). Judge Cohn reasoned in *Willoughby* that because of the unique characteristics of public employment, the *Toussaint* doctrine of implied just-cause employment contracts should not extend to public or municipal employees, citing *Johnson v City of Menominee,* 173 Mich App 690; 434 NW2d 211 (1988). I would prefer to restrict *Toussaint* claims to private sector employees and to employ the due process analysis of *Perry v Sinderman,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972), to wrongful discharge claims of public sector employees.

The majority here has prudently construed *Toussaint* in harmony with the school board's and the superintendent's statutory rights. The School Code provides:

> The contract with the superintendent shall be for a term, not to exceed 3 years, fixed by the board. Notification of nonrenewal of contract shall be given in writing at least 90 days before the contract termination date or the contract is renewed for an additional 1-year period. [MCL 380.132(1); MSA 15.4132(1).]

However, in a broader framework, recognition of *Toussaint* claims in the public sector would have significant and adverse policy ramifications. Extension of *Toussaint* could lead to denial of the right of the people, through their elected representatives, to decide crucial political questions, such as who shall serve as the chief executive officer of a school district. One board of education should not, through the device of a "just cause" employment contract, be able to bind another board, elected later, to a contract it would not originally have approved. Extension of *Toussaint* will inevitably lead to lengthy court battles. If the courts of this state are to shoulder this burden, the Supreme Court should declare it.

The imposition of *Toussaint* remedies in situations where a web of statutes and ordinances already affects the employment of public sector employees is a question worthy of Supreme Court attention.