*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JON BLOEMKER and KATHLEEN BLOEMKER,

        Plaintiffs/Counterdefendants-
        Appellees,

v

RICHARD DUMONT and SHANNON DUMONT,

        Defendants/Counterplaintiffs-
        Appellants.

UNPUBLISHED
July 01, 2025
10:48 AM

No. 371160
Wexford Circuit Court
LC No. 2023-030738-CZ

Before: MARIANI, P.J., and MALDONADO and YOUNG, JJ.

PER CURIAM.

This case involves a dispute between two neighbors. Plaintiffs/counterdefendants-appellees, Jon and Kathleen Bloemker, sued their neighbors, defendants/counterplaintiffs-appellants, Richard and Shannon Dumont, in the Wexford Circuit Court, alleging the Dumonts' wood processing business amounted to a private nuisance and/or a nuisance per se. The trial court granted partial summary disposition under MCR 2.116(C)(10) to the Bloemkers on their nuisance per se claim, finding that processing timber into firewood and then selling the firewood is not "forestry" under the local zoning ordinance. Following entry of partial summary disposition on the nuisance per se claim, the trial court entered an order of dismissal on the private nuisance claim. The Dumonts appeal and we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Bloemkers own real property at 11471 E 14 1/2 Road in Manton, Michigan (the "Bloemker Property"), which they purchased for their retirement home in 2016 and at which they reside full time. In 2018, the Dumonts bought a neighboring property at 11401 E 14 1/2 Road in Manton, Michigan (the "Dumont Property"), which includes a residence, other buildings, and heavy machinery. These two properties are located in an area zoned as a "Rural Conservation District." The Cedar Creek Zoning Ordinance (the "Zoning Ordinance"), which applies to these properties, includes allowance for "farming and forestry operations."

The way in which the Dumonts run their family-owned business on their property is central to the instant dispute. The Dumonts harvest timber on a different plot of land not at issue here, transport the harvested wood to the property at issue, store it on their property, process the timber into firewood, and then sell firewood from the property. These operations allegedly cause disruptive noise and nuisance to the Bloemkers.

The Bloemkers' counsel sent a cease and desist letter to the Dumonts on December 30, 2022, asking them to stop the "very loud log cutting." After the Dumonts continued operations, on March 2, 2023, the Bloemkers filed a complaint alleging two counts: private nuisance (Count I), and nuisance per se under MCL 125.3407 (Count II). According to the Bloemkers' complaint, the Dumonts' actions constitute a nuisance per se because their business activities are not permitted under the Zoning Ordinance. The Dumonts' answer to the complaint asserted a counter-complaint with three counts for defamation, tortious interference, and intentional infliction of emotional distress.

The trial court issued a scheduling order setting forth various deadlines, including that the parties were to exchange witness and exhibit lists by July 7, 2023, complete discovery by October 5, 2023, and file and have motions heard by November 4, 2023. The order allowed amendments to witness and exhibit lists, provided there was no prejudice and that the amendments were "done promptly." The order stated that failure to comply would bar introduction of evidence or testimony at trial. The Bloemkers timely filed their witness and exhibit lists; the Dumonts did not.[1]

The Bloemkers moved for partial summary disposition under MCR 2.116(C)(10) as to the nuisance per se claim, arguing there is no genuine issue of material fact that the Dumonts' actions of storing, processing, sawing, and selling timber on their property violate the Zoning Ordinance. The Dumonts responded, arguing that the Zoning Ordinance cannot bar their actions, which constitute "forestry," and are protected under the Right to Forest Act, MCL 320.2031 *et seq*.

The trial court heard arguments from both parties on April 11, 2024. The trial court granted partial summary disposition to the Bloemkers in an April 22, 2024 written order. Before reaching its holding, the order detailed the trial court's hesitancy to grant summary disposition on the limited record before it, and outlined significant issues in both the Bloemkers' pleadings and motion, and the Dumonts' failure to comply with the scheduling order and lack of supporting evidence. As to the Dumonts, the trial court criticized, among other things, their late-filed single affidavit from an individual named Shawnee Horn:

> Not only did [the Dumonts] file their brief late[,] they also failed to provide any admissible evidence in support of it. It only included a single affidavit from a person named Shawnee Horn; however, it was of no value. In part, that affidavit merely asserted an opinion in the form of a hearsay statement from an unnamed zoning administrator who apparently is not on any witness lists. It also simply referenced possible business practices of a possibly similar business from some

---

[1] The Dumonts' witness list was six months late. The Dumonts obtained new counsel and filed another witness list, and their first exhibit list, on April 8, 2024, just a few days before the hearing on the Bloemkers' motion for partial summary disposition and one month prior to trial.

unknown location. Moreover, even though [the Dumonts] filed two late witness lists, Shawnee Horn is not listed on either. In fact, [the Dumonts] have never listed any expert witnesses on either of their very late witness lists. Thus, [the Dumonts] presented absolutely zero admissible evidence for this Court to consider.

Regarding the Bloemkers' flaws, the trial court stated:

As for [the Bloemkers], there is one thing missing from their motion: factual evidence to document the facts. The complaint was not verified. They did not present any affidavits or depositions. Again, the same court rule, MCR 2.116(G)(4) referenced above about the failures of the [Dumonts] requires that when such a motion is made it, like the response, must be supported by admissible facts not rest merely on pleadings. Unfortunately, the motion was itself not properly supported by anything other than documentary exhibits and images.

Nevertheless, the trial court determined the case was ripe for summary disposition as a matter of law:

This puts the [c]ourt in a difficult position. Neither party really seems to have presented any real facts for the Court to consider and from which to make findings of fact. However, the case is set for trial. The facts, however do not appear to be at issue. The [c]ourt finds that the parties do not contest the basic factual allegations as set forth above. This case is simply about the law and its application.

In reaching its legal conclusion, the trial court, noting that forestry operations were not defined in the Zoning Ordinance, looked at the definition of "forestry operations" under the North American Industry Classification System (NAICS) and the Right to Forest Act, MCL 320.2033(d). From those sources, the trial court found it clear that the Dumonts' activities fell outside "forestry" as contemplated in the Zoning Ordinance and were in violation of that ordinance. The trial court accordingly granted partial summary disposition, finding for the Bloemkers on the nuisance per se claim. As for the private nuisance claim, it said, "the [c]ourt cannot, that based on what has been provided to the Court, make any findings of fact as to Count [I] and monetary damages." On May 14, 2024, the trial court entered an order dismissing the private nuisance claim without prejudice. This appeal followed.

## II. ANALYSIS

### A. ISSUE PRESERVATION AND STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Cetera v Mileto*, 342 Mich App 441, 446-447; 995 NW2d 838 (2022). "When reviewing a motion brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties . . . in the light most favorable to the party opposing the motion." *Yang v Everest Mut Ins Co*, 507 Mich 314, 320; 968 NW2d 390 (2021) (quotation marks and citation omitted). "Summary disposition is appropriate where no genuine issue of material fact exists." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

The Dumonts argue, for the first time on appeal, that the trial court erred by granting the Bloemkers' motion for partial summary disposition because the Bloemkers failed to set forth sufficient evidence to establish a genuine issue of material fact. The Dumonts have waived this argument by failing to raise it in the lower court. See *Tolas Oil & Gas Exploration Co v Bach Srvs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). However, we address this argument briefly in the section below.

## B. THE TRIAL COURT DID NOT ERR BY ADJUDICATING THE BLOEMKERS' MOTION FOR PARTIAL SUMMARY DISPOSITION ON THE LIMITED FACTUAL RECORD BEFORE IT

The Dumonts argue that the trial court erred by granting the Bloemkers' motion for partial summary disposition because the court had no admissible evidence before it to show the Dumonts had engaged in the operation of a sawmill or otherwise violated the Zoning Ordinance, and that the trial court erred further in excluding the affidavit of Shawnee Horn. As noted, in its order, the trial court observed that "[n]either party really seems to have presented any real facts for the [c]ourt to consider and from which to make findings of fact," but it nonetheless deemed the Bloemkers' motion fit for adjudication as a matter of law because "the parties do not contest the basic factual allegations" and "[t]his case is simply about the law and its application." And as to Shawnee Horn, her affidavit was rejected because she was not included on the Dumonts' witness list, the affidavit was filed past the deadline for answering the motion for summary disposition, and the affidavit offered an opinion on the legal issue before the trial court and did not provide any admissible, material facts.

We see no merit in the Dumonts' claims of error on these matters. To start, we disagree with the Dumonts that the trial court erred by granting summary disposition to the Bloemkers under MCR 2.116(C)(10) based on the factual record before it. As the court duly recognized, while that record was quite limited, there was nothing to indicate that a genuine factual dispute existed regarding the particular legal issue on which the motion was based. In their motion, the Bloemkers argued that the Dumonts' operation violated the Zoning Ordinance and thus constituted a nuisance per se. In support, the Bloemkers submitted photographs of the Dumonts' property and operation, described that operation, and discussed how it did not meet the legal definition of "forestry" under the Zoning Ordinance.

The Dumonts' response to the Bloemkers' motion was very brief, spanning scarcely one full page and arguing that their operation was not a nuisance per se because it fell within what the Dumonts identified as the relevant legal definition of "forestry." The response summarized the Bloemkers' description of the operation as "hauling and storing timber on their property in addition to using heavy machinery and a sawmill to convert the raw timber into firewood," but it did not dispute that description or otherwise elaborate on the operation beyond stating that "[a] sawmill is the cutting of timber into dimensional lumber, which does not exist in the present case."[2] The

---

[2] Both below and on appeal, the Dumonts stress that they do not operate a sawmill. However, they fail to explain why that fact, or any dispute about that fact, would be material to the disposition of the instant motion, given the aspects of their operation that they did not put in dispute and the

Dumonts also did not take issue with the photographs the Bloemkers submitted, or argue that the motion failed to adequately "identify the issues as to which the [Bloemkers] believe[d] there [was] no genuine issue as to any material fact." MCR 2.116(G)(4).

As to their own factual support, the Dumonts offered only—and belatedly—the affidavit of Shawnee Horn. We agree with the trial court that this affidavit did not present any helpful factual evidence about the Dumonts' operation. Rather, the affidavit attempted to present a purely legal conclusion as to what constitutes a "forestry operation" without stating particular knowledge of facts related to the operation at issue here. See *Durant v Stahlin*, 375 Mich 628, 657; 135 NW2d 392 (1965) (affidavits based on belief instead of personal knowledge, or "cast in conclusory language" instead of stating facts, are not proper). The affidavit stated in broad terms that Shawnee Horn had been in the industry for over 25 years operating her own logging company during that time, and had performed thousands of contracts for timbering purchases with businesses and landowners—but it made no mention of any specific connection with the Dumonts. It then jumped to various legal conclusions regarding the term "forestry operation," asserting that "forestry operation requires us to take timber back to our own property to be cut into firewood" and "firewood processing is a generally accepted part of a forestry operation," among other statements. The affidavit then closed by making representations regarding the views of an unnamed zoning administrator, which the trial court correctly identified as improper hearsay. The affidavit is entirely devoid of personal knowledge or details regarding the actual operations under review in this case. We find no error in the trial court's decision to reject this affidavit, which presented no relevant, admissible facts and only attempted to offer a legal opinion. See *Thorin v Bloomfield Hills Bd of Ed*, 203 Mich App 692, 704; 513 NW2d 230 (1994) (explaining "it is within the exclusive responsibility of the trial [court] to find and interpret the applicable law").

This conclusion is bolstered by the fact that, as emphasized by the trial court, Shawnee Horn never appeared on any witness list from the Dumonts or was otherwise disclosed to the trial court. The Dumonts had ample opportunity to name Shawnee Horn, retain additional witnesses and experts, and collect supporting documentary evidence, but they failed to do so. They did not otherwise carry their burden to offer evidence that "set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

In sum, the Dumonts failed to present any argument or evidence to the trial court that demonstrated a deficiency fatal to the Bloemkers' motion or the existence of a genuine issue of material fact. To the contrary, the court correctly concluded that the Bloemkers' motion presented an issue of law fit for adjudication through summary disposition. And, for the reasons that follow, summary disposition to the Bloemkers was proper.

---

analysis later in this opinion of that conduct's lawfulness. Similarly, while the Dumonts criticize the trial court's ruling for at times describing their operation as including a sawmill, we see no basis to conclude that any error in that regard meaningfully impacted the court's overall analysis or rendered the award of summary disposition improper.

## C. THE TRIAL COURT DID NOT ERR IN FINDING THAT THE DUMONTS' ACTIONS DID NOT CONSTITUTE "FORESTRY" AND VIOLATED THE ZONING ORDINANCE

MCL 125.3407 provides that certain uses of land constitute a nuisance per se. That statute reads:

> Except as otherwise provided by law, a *use of land* or a dwelling, building, or structure, including a tent or recreational vehicle, used, erected, altered, razed, or converted *in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se*. The court shall order the nuisance abated, and the owner or agent in charge of the dwelling, building, structure, tent, recreational vehicle, or land is liable for maintaining a nuisance per se. (Emphasis added.)

The trial court primarily considered two sources in determining whether the Dumonts have the right to conduct their wood processing operation on their property: the applicable Zoning Ordinance and the Right to Forest Act.[3] There is no dispute that the Zoning Ordinance covers both the properties at issue and that the properties lie within the Rural Conservation District. As the name suggests, the Rural Conservation District emphasizes uses that protect natural features of the district to preserve them for future agriculture and forestry. The Cedar Creek Township Master Plan echoes these goals for the Rural Conservation District, stating: "The intent of this district is to conserve unique and sensitive natural features and large blocks of land devoted to farming and forestry operation and open space." Section 3602 of the Zoning Ordinance limits uses of land in the Rural Conservation District as follows:

> Only the following uses shall be permitted, by permit, as specified in section 8401 of this Ordinance:
>
> G.      Agriculture, Forestry, Fishing and Hunting [11] including but not limited to the following accessory uses:
>
> >    1.      One dwelling for the owner, operator, or employee of a farm
> >
> >    2.      Fresh Fruits and Vegetable Wholesalers [42248]
> >
> >    3.      Fruits and Vegetable Markets [44523]
> >
> >    4.      Refrigerated Warehousing and Storage [49312]
> >
> >    5.      Farm Product Warehousing and Storage [49313]

---

[3] The trial court reviewed the Right to Forest Act because that is the source upon which the Dumonts' arguments relied. But the Right to Forest Act is not expressly referenced in the Cedar Creek Zoning Ordinance. And, even if it were a valid resource to define forestry for purposes of the Zoning Ordinance, it is unhelpful to their case because, as discussed later in this opinion, the definition of forestry in the Right to Forest Act does not include the Dumonts' activities.

Thus, the inquiry before the trial court and this Court on appeal is whether the Dumonts' activities constitute "forestry." The Zoning Ordinance does not define "forestry," but Section 503(B) of the Zoning Ordinance directs the reader to the NAICS to interpret undefined terms. Specifically, the Zoning Ordinance provides:

> Terms denoting 'uses' which are not defined in Section 505 of this Ordinance, but which are followed by two to six series of numbers enclosed in brackets ( [] ) shall be defined as found under the respective North American Industry Classification System (hereafter "NAICS") Short Titles[.]

While the NAICS references "harvesting timber" as a forestry activity, it omits any reference to processing harvested timber for sale.

Further, Section 5503 of the Zoning Ordinance prohibits "manufacturing" within the Rural Conservation District without a special permit. The NAICS emphasizes that "[e]stablishments in the Manufacturing sector are often described as plants, factories, or mills, and characteristically use power-driven machines and materials-handling equipment." As discussed, and as the trial court recognized, the Dumonts have failed to create a genuine factual dispute as to their use of machinery on their property to convert timber into firewood.

The Dumonts conversely highlight the definition of "forestry" under the Right to Forest Act, MCL 320.2033(d), which states:

> (d) "Forestry operations" means activities related to the harvesting, reforestation, and other management activities, including, but not limited to, thinning, pest control, fertilization, and wildlife management, that are consistent with principles of sustainable forestry.

The Dumonts emphasize that MCL 320.2034(1) expressly prohibits a finding that a forestry operation constitutes a public or private nuisance. MCL 320.2034(1) specifically states:

> (1) Forestry operations shall not be found to be a public or private nuisance. if the forestry operations alleged to be a nuisance conform to generally accepted forestry management practices. Generally accepted forestry management practices shall be reviewed annually by the commission and revised as considered necessary.

Further, MCL 320.2033(e) states:
> (e) "Generally accepted forestry management practices" means those forest management practices as prescribed by the commission. In prescribing generally accepted forestry management practices, the commission shall give due consideration to available department information, written recommendations, and comments from the department and other interested persons that may include, but are not limited to, all of the following:
>
> (i) The department of agriculture.
>
> (ii) The Michigan state university extension.

(iii) The United States department of agriculture agencies, services, and programs.

(iv) College and university forestry programs.

(v) Professional, industry, and conservation organizations.

The trial court addressed these arguments, finding that "[t]he generally accepted forestry management practices created under the Right to Forest Act do not talk about operating sawmills, stacking and selling firewood or other products."

When interpreting a statute, the primary goal is to determine and give effect to the intent of the Legislature by first looking to the language of the statute. *People v Morrison*, 328 Mich App 647, 651; 939 NW2d 728 (2019). If the statutory language is plain and unambiguous, "the Legislature's intent is clearly expressed, and judicial construction is neither permitted nor required." *People v Costner*, 309 Mich App 220, 224; 870 NW2d 582 (2015). A statute is considered "ambiguous" when it is susceptible to "more than one reasonable interpretation," and courts may look beyond the language of the statute to determine legislative intent only when the language of the statute is ambiguous. *People v Rutledge*, 250 Mich App 1, 5; 645 NW2d 333 (2002). When an ambiguity is present "the intent of the Legislature must be put into effect by reasonably construing the statute, considering its purpose and the object it seeks to accomplish." *Keweenaw Bay Outfitters & Trading Post v Dept of Treasury*, 252 Mich App 95, 97; 651 NW2d 138 (2002). The same principles guide the interpretation of an ordinance. *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020).

Here, while the plain language of the Zoning Ordinance did not define "forestry," it expressly incorporated by reference the definition provided by the NAICS, which is not ambiguous as to what constitutes forestry. Under its plain language, the NAICS does not contemplate the activities at issue within its definition of forestry. Next, in reviewing the Right to Forest Act, the trial court found that the plain definition of forestry provided in that statute also did not include the activities at issue here.[4] The trial court's interpretation of these provisions was proper, as was its application of them to the record before it. As discussed, the trial court acknowledged the limited record and lack of factual development presented by both parties, and correctly concluded it was nonetheless equipped to grant partial summary disposition on the legal issue before it without needing additional facts. We find no error in the trial court's method of statutory interpretation and its award of summary disposition to the Bloemkers.

---

[4] The Dumonts argue, for the first time on appeal, that the Right to Forest Act preempts the Zoning Ordinance. The Dumonts have waived this argument by failing to raise it below. See *Tolas Oil*, 347 Mich App at 289. And the argument would be of no help to them here in any event, given that their position fails under both the Zoning Ordinance and the Right to Forest Act.

Affirmed.

/s/ Philip P. Mariani<br>
/s/ Allie Greenleaf Maldonado<br>
/s/ Adrienne N. Young